

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0468-07

## KIMBERLY LYNN ALLEN, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

It is a defense to the offense of simple assault that the victim effectively consented to

the offender's assaultive conduct or that the offender reasonably believed that the victim

consented, at least so long as the conduct did not threaten or inflict serious bodily injury.[1]

---

[1]

TEX. PENAL CODE § 22.06 ("The victim's effective consent or the actor's reasonable belief that the victim consented to the actor's conduct is a defense to prosecution under Section 22.01 (Assault) . . . if . . . the conduct did not threaten or inflict serious bodily injury[.]"). There is no contention in this case that the defense of consent was unavailable to the appellant because her conduct threatened or inflicted serious bodily injury.

When evidence at trial raises the defense of consent, "the court shall charge [the jury] that a reasonable doubt on the issue requires that the defendant be acquitted."[2] In the instant cause, involving a prosecution for simple assault, the trial court concluded that the evidence raised the defense of consent and instructed the jury on that defense. However, the trial court neglected to instruct the jury, either in the abstract that it must acquit should it have a reasonable doubt with respect to *any* defense, or specifically in the paragraph applying the law of consent that it must acquit the appellant should it have a reasonable doubt on that issue as raised in her case. In the absence of any objection to this omission, the court of appeals applied the standard for egregiously harmful jury charge error in *Almanza v. State*,[3] found egregious harm, and reversed the appellant's conviction, remanding the cause for a new trial.[4]

In its petition for discretionary review, the State concedes that the court of appeals applied the right standard for assessing egregious harm under *Almanza*. However, the State contends that the court of appeals's application of that standard conflicted with this Court's

---

[2] TEX. PENAL CODE § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted.").

[3] 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on rehearing).

[4] *Allen v. State*, ___ S.W.3d ___, 2007 WL 79419 (Tex. App.—Hous. [1ˢᵗ], delivered January 11, 2007). The court of appeals also found the evidence to be legally sufficient to support the conviction, but did not reach the appellant's claim of factual insufficiency in light of its reversal of the conviction based upon the defective consent instruction.

recent application of the standard in *Olivas v. State*.[5] We granted the State's petition in order to examine this contention.[6]

**FACTS AND PROCEDURAL POSTURE**

The appellant was charged by information with the misdemeanor offense of assault, allegedly committed by striking Jackie Dubendorf with her hand in the early morning hours of December 14, 2002, in a Denny's restaurant. A number of customers and employees of the restaurant testified that the appellant and her two friends created a disturbance and were asked by the managing waitress to leave. The State's witnesses claimed that the appellant was loud, raucous, and threatening, and that her language was laced with profanity. It is undisputed that the appellant threw a beverage on the managing waitress. For their part, the appellant and her two friends denied that they had created any kind of disturbance. In their testimony, they claimed that it had been another group of patrons who had been loud and boisterous, and that they were taken by surprise when asked to leave. They denied threatening anyone, or that they had used an excessive amount of profanity. The appellant contended that she only threw the beverage after the managing waitress had spilled food in her lap and on her coat while attempting to clear their table of dishes in an effort to persuade them to leave. One of the customers was alarmed enough to call 9-1-1 on his cell phone.

When the appellant and her friends approached the cash register to pay their check,

---

[5] 202 S.W.3d 137 (Tex. Crim. App. 2006).

[6] *See* TEX. R. APP. P. 66.3 (c).

they began to use abusive language against the cashier. But they claimed they only began to berate him when he falsely accused them of being "drunks." At this point the complainant, who had been sitting in the smoking section of the restaurant and had witnessed the scene from a distance, approached. She testified that she told the appellant "that she wasn't impressing anybody." The appellant answered that she "sure the fuck ain't trying to impress you . . . I ought to walk over there and slap the fuck out of you." The complainant testified that at this point, "I stood back with my arms out to my side and said, then, slap me." The appellant struck the complainant, tearing a ring from her pierced eyebrow and inflicting a wound that bled substantially and had to be closed with a butterfly bandage.

For her part, the appellant described the assault as follows:

Q.     Okay. What happened next?

A.     Well, when [the complainant] walked up to me, I looked at her and she said, do you think you're impressing anybody. I looked at her and it was like, I don't know you, I don't have to impress you. And, she goes, well, you're not. And, at that point, she got closer to my face.

Q.     How close was she?

A.     About this close. About eight inches away. So, what I did, I took a step back and I said, back away from me. A response to me telling her to back up was, well, what are you going to do. I backed up again. So, now instead of being closer to the door, I'm closer to the register. And, it was like a mob of people coming toward me. The more I backed up the more they came toward me. And, I was like, one more time, if you don't back up, I'm going to slap the shit out of you. She got real flamboyant like, well, go ahead. Do it. Do it. At this time, she's so close, she's like, spitting in my face. I kept backing away and I fell into it.

Q.     What did you do?

A.     I slapped her.

Other witnesses claimed that the complainant had responded to the appellant's threat to slap her by saying, "if you want to hit me, hit me," "well then, come on, hit me," "well, slap me, then," "do it, do it," or words to that effect. According to the appellant and one of her friends, the complainant said this in a "challenging," or "demanding" tone. Immediately after the appellant struck the complainant, the police arrived and arrested her.

The trial court submitted jury instructions on the defensive issues of self-defense and consent. The instruction on self-defense properly informed the jury that a reasonable doubt on the issue would require the jury to acquit the appellant. But when it came to give the charge with respect to the defense of consent, the trial court instructed the jury:

> You are further instructed that it is a defense to a prosecution for assault if the victim of the assault effectively consents to the conduct of the actor, or the actor reasonably believed that the victim consented to the actor's conduct.

> Therefore, if you find from the evidence, beyond a reasonable doubt, that the defendant, Kimberly Lynn Allen, struck Jackie Dubendorf with her hand; but, you further find from the evidence that Jackie Dubendorf effectively consented to the strike by her conduct, you will acquit Kimberly Lynn Allen and say by your verdict, "not guilty."

Conspicuously absent from this instruction is the requirement that the jury acquit the appellant should it have a reasonable doubt with respect to whether the complainant consented to the assaultive conduct. The appellant failed to object to this deficiency at trial.[7]

---

[7] Although the clerk's record confirms that the appellant submitted a proposed instruction to

The jury rejected both of the appellant's defensive issues, and found her guilty of assault. The trial court assessed punishment at 180 days' confinement and a $500 fine, but suspended the sentence and placed the appellant on community supervision for one year.

The appellant complained of the deficiency in the consent instruction on appeal. The court of appeals held that the instruction was indeed erroneous, but that the appellant had not preserved the error on appeal.[8] It therefore turned to the question whether the record revealed that the appellant had been egregiously harmed by the error.[9] After examining the entire jury charge, the state of the evidence and the contested issues at trial, the arguments of the parties, and the record as a whole, the court of appeals concluded that the appellant was egregiously harmed.[10] The court of appeals concluded, in a nutshell, that nothing in the balance of the jury charge or in the jury arguments by the parties ameliorated the fact that the trial court's instruction on consent had effectively shifted the burden of proof to the appellant on the most hotly contested issue in the case, and that the deficiency was therefore sufficient

---

the trial court in writing that would have properly instructed the jury with respect to the burden of proof on the issue of consent, this proposed instruction was apparently never presented to the trial court for a ruling, and the appellant failed to object to the deficiency during the charge conference as memorialized in the reporter's record. The court of appeals therefore held that the error was not preserved and that the appellant could obtain relief on appeal only if the record revealed egregious harm. *Allen v. State*, *supra*, at *4).

[8] *Allen v. State*, *supra*, at *2-*4.

[9] *Id.*, at *4.

[10] *Id.* at *4-*5.

to deprive the appellant of a fair trial.[11]  We will reverse.

## APPLICATION OF THE LAW TO THE FACTS

There is no dispute about the applicable law, and we will only briefly dwell on it here. This case must be analyzed under the standard of *Almanza v. State*, which in turn relied upon Article 36.19 of the Code of Criminal Procedure.[12]  Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm."[13] In examining the record for egregious harm, *vel non*, a reviewing court should consider (as the court of appeals did in the instant case) 1) the entire jury charge, 2) the state of the evidence, including the contested issues and the weight of the probative evidence, 3) the final arguments of the parties, and 4) any other relevant information revealed by the record of the trial as a whole.[14]  Jury charge error is egregiously harmful if it affects the very basis of the

---

[11]  *Id*.

[12]  *Olivas v. State*, *supra*, at 143-44, citing *Almanza*, *supra*, *Abnor v. State*, 871 S.W.2d 726 (Tex. Crim. App. 1994), *State v. Toney*, 979 S.W.2d 642 (Tex. Crim. App. 1998), and TEX. CODE CRIM. PROC. art. 36.19.  Moreover, because the trial court did give an instruction, albeit flawed, on the defensive issue of consent, that defensive issue became "the law applicable to the case" in contemplation of TEX. CODE CRIM. PROC. art. 36.14.  *See Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998).

[13]  *Almanza v. State*, *supra*, at 171; *Abnor v. State*, *supra*, at 731-32.

[14]  *Olivas v. State*, *supra,* at 144.  *See* George E. Dix & Richard O. Dawson, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 36.03, at 561 (2d ed. 2001).

case, deprives the defendant of a valuable right, or vitally affects a defensive theory.[15]

The State now concedes that the court of appeals applied this standard for egregious harm, but contends that it erred in the application, reaching "a conclusion that no reasonable court could have reached upon these facts."[16] According to the State, the court of appeals failed to recognize the paucity of the evidence raising the issue of consent, and the unlikelihood that the jury would really have perceived that the burden of proof belonged to the defendant on that issue in light of the jury charge as a whole and the final arguments. We turn to address these contentions.

### The Entire Jury Charge

As it did in the court of appeals, the State points to other portions of the jury charge in close proximity to the consent instruction quoted above which it claims would have made it apparent to the jury that it should acquit the appellant in the event that it had a reasonable doubt as to whether the complainant consented. For example, directly preceding the deficient consent instruction, the jury charge correctly informed the jury that it should acquit the appellant should it harbor a reasonable doubt whether she acted in self defense. But the court of appeals drew an altogether different inference from this juxtaposition. The court of appeals concluded that a reasonable juror would more likely construe this conspicuous

---

[15] *E.g.*, *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

[16] State's Brief, at 9.

difference in the two defensive instructions as an indication "that there were different burdens on the two defenses."[17] We agree with this conclusion. From the fact that the self-defense instruction contained explicit reasonable-doubt language, the jury might well infer that it should expect to see comparably explicit reasonable-doubt language in the consent instruction if such a standard was indeed applicable there. The conspicuous absence of such explicit language from the consent instruction would not likely be lost on the jurors.

The State also points to language immediately following the deficient consent instruction, in which the trial court instructed the jury in the abstract with respect to reasonable doubt:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at the person's trial. The law does not require a defendant to prove his or her innocence or produce any evidence at all.

> The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

But these reasonable-doubt instructions, by their terms, apply to the elements of the State's case, not to confession-and-avoidance type of defensive issues such as self defense or

---

[17] *Allen v. State*, *supra*, at *4.

consent. They do not amount to an abstract instruction that any reasonable doubt as to a *defensive issue* must be resolved in the appellant's favor, to which we could reasonably assume the jury would refer in applying the application paragraph on consent. Nothing in the balance of the jury instructions inspires confidence that the jury would somehow glean that it must acquit the appellant in the event it should have a reasonable doubt with respect to the issue of consent, despite the deficiency in the consent instruction.

The State argues that this conclusion conflicts with our analysis in *Olivas*.[18] We do not agree. In *Olivas*, the trial court submitted a deadly-weapon issue to the jury without informing it that the State had the burden to prove the use or exhibition of a deadly weapon beyond a reasonable doubt.[19] Examining the jury charge as a whole, we noted the pervasive instructions that the State had the burden of proof on every element in the case; but because nothing in the jury charge explicitly identified the deadly weapon issue as an "element" of the State's case, we concluded that examination of the jury charge as a whole was "not determinative" of the question of egregious harm.[20] Comparing the appellant's jury charge to the one in *Olivas*, we observe that, because the jury charge in the appellant's case did not define "consent" as an element of the case, there is likewise no reason to assume that general

---

[18] 202 S.W.3d at 146-47.

[19] *Id*. at 139.

[20] *Id*. at 146-47.

instructions on reasonable doubt, assigning the burden to the State, would necessarily apply. Moreover, *Olivas* did not involve explicit language in one defensive instruction assigning the burden of proof to the State, as we have here, which could reasonably lead a jury to conclude that no similar burden applies to *another* defensive instruction from which such explicit language is conspicuously absent. The court of appeals's conclusion that the jury charge as a whole does not ameliorate the deficiency in the consent instruction does not conflict with our opinion in *Olivas*. Analysis of the other *Almanza* factors, however, leads us to conclude that the court of appeals ultimately erred in finding egregious harm.

### The State of the Evidence

The court of appeals observed that although both self defense and consent were raised by the evidence, "consent was the issue much more contested."[21] In her own testimony, the appellant admitted that she had assaulted the complainant, so in the absence of a favorable jury verdict with respect to one of these defensive issues, her conviction was assured. Thus, the deficiency in the consent instruction certainly touched upon a vital aspect of the defendant's case. The State argues, however, that the evidence raising the issue of consent was "incredible." Again, the State points to *Olivas*, and argues that the evidence as to the use or exhibition of a deadly weapon in that case "was not uncontested," yet the Court ultimately

---

[21] *Allen v. State*, *supra*, at *4. During final arguments, the prosecutor acknowledged that the consent defense "is the one they're hanging their hat on."

concluded that the defendant suffered no egregious harm.[22]  Given the implausibility of the appellant's consent theory, the State urges, we should conclude similarly here.  We will defer our discussion of this issue until we come to address the record as a whole.

### The Jury Arguments

During his final summation to the jury, defense counsel argued that the State carried the "onerous burden" to explain "why the law of consent is not going to apply to this case." He conceded that the evidence established "a striking," but emphasized that "the defenses have to be disproved beyond a reasonable doubt."  For its part, the State argued:

> Jackie Dubendorf did not consent.  The ladies and gentlemen, it is up to you to decide if it's reasonable to believe that Jackie Dubendorf walked up there wanting to get hit.  Is that reasonable?  That is what consent is all about. That's what the law says.

The defense objected that "[t]hat's not what the law says."  The trial court simply responded, "You will have, in the court's charge, what the law says."

The court of appeals held that, although the appellant's final argument had assigned the burden of proof correctly, the State's argument subsequently "confused matters," and that the trial court's instruction to the jury to attend to the charge for a correct statement of the law did not remedy the situation, since the consent instruction itself was deficient.[23]  We disagree that the prosecutor's argument actually "confused matters" with respect to the

---

[22]  202 S.W.3d at 148-49.

[23]  *Allen v. State*, *supra*, at *5.

proper assignment of the burden of proof. In our view, the prosecutor's remarks reflected an accurate and appropriate explication of the law of consent quite apart from the matter of which party bore the burden of proof.

The trial court had properly instructed the jury that "it is a defense to a prosecution for assault if the victim effectively consents to the conduct of the actor, or the actor reasonably believed that the victim consented to the actor's conduct." Accordingly, the State has the burden to persuade the jury,[24] among other things, that the appellant could not reasonably have *believed*, under the circumstances, that the complainant had actually consented to being struck. We believe the prosecutor was merely urging the jury to find that appellant did not reasonably believe the complainant had consented because the surrounding circumstances would not support such a reasonable belief. This proper argument with respect to *what* the jurors should find (as opposed to *how confident* they must be in finding it) was patently neutral with respect to which party carried the burden of proof, and would not have served to negate defense counsel's earlier assertions that the law reposes the burden of persuasion squarely with the State. For this reason we reject the court of appeals's conclusion that the State's jury argument somehow refuted or confused the defense counsel's otherwise clear and accurate assignment of the burden of proof.

---

[24] Although the State has no burden of production of evidence on a defensive issue, once a defense is raised it is the State's burden to *persuade* the jury with respect to that issue, since "a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE §2.03 (d). *See Zuliani v. State*, 97 S.W.3d 589, 594 & n.5 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991).

## The Record as a Whole

During deliberations, the jury requested to be furnished with "the transcript" of two of the State's witnesses, both of whom were waitresses at the Denny's. The trial court instructed the jury that it must certify to a disagreement amongst themselves before having any testimony read back to them.[25] The jury indicated that it had a disagreement with respect to one of the waitresses's testimony during defense examination describing the assault. The trial court caused that portion of the evidence to be read back to the jury in open court. The court of appeals noted that this jury request "further illustrates that the central issue was whether the complainant consented to the assault."[26] Again, we cannot disagree that consent was the central issue in the case. Nevertheless, we do not ultimately believe that the record as a whole supports a conclusion that the appellant suffered egregious harm.

The appellant is, of course, entitled to an instruction on every defensive issue raised by the evidence, "whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of what the trial court may or may not think about the credibility of the defense."[27] In the instant case it is undisputed that the complainant used abstract language of consent when she told the appellant, in response to appellant's threat, to "go ahead,"

---

[25] *See* TEX. CODE CRIM. PROC. art. 38.28.

[26] *Allen v. State*, *supra*, at *5.

[27] *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).

"come on," "slap me," "hit me," "do it," or some combination of words to that effect. If she meant what she said to be taken literally, then obviously she would have given her "effective consent" to be struck. Whether she meant it literally was a question of fact for the jury to resolve, of course, and a full and proper jury instruction was required. Had the appellant objected to the absence of a proper assignment of the burden of proof in the consent instruction, we might very well find "some harm," since the error did indeed go to the central issue in the case.[28]

But in an egregious-harm analysis, it is appropriate to consider the plausibility of the evidence raising the defense, as at least one factor among others.[29] In the context of this case, it is appropriate to inquire of the likelihood that the jurors, even properly instructed as to the burden of proof, would have accepted the literal content of the complainant's words as an accurate conveyance of her intended meaning, or, alternatively (since there is more than one way to find consent under the statute), that they would have found that the appellant was reasonable under the circumstances to construe the complainant's words as indicative of literal consent. The uncontested circumstances immediately surrounding the assault itself do not strongly suggest either that the complainant genuinely desired to be struck, or that the

---

[28]

*See Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (when jury charge error is preserved by objection, appellate court must reverse upon a showing of "some harm"); *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) ("the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require reversal of the conviction.").

[29]

*Almanza v. State*, *supra*, at 173-74.

appellant would have believed that she did. Common experience tells us that such apparent bravado ("go ahead," "come on," "slap me," "do it") in the face of an expressed threat does not normally communicate a genuine desire to be assaulted; it far more likely constitutes a backhanded warning of potentially dire consequences to the threatener should she actually carry out her threat. The appellant's own evidence shows that she was cognizant of the "challenging" and "demanding" tenor of the complainant's statements. It seems clear enough that appellant was aware of the complainant's true meaning. Even a jury properly instructed with respect to reasonable doubt would not likely have found under these circumstances that the complainant gave her effective consent to being struck or that the appellant reasonably believed that she did.

**CONCLUSION**

Although the jury charge erroneously failed to inform them of it, the jurors were aware from defense counsel's uncontradicted final argument that the State shouldered the burden of persuasion on the defensive issue of consent, and that a reasonable doubt on that issue meant that the jury should acquit. In any event, the chances that the jury would have actually harbored a reasonable doubt that the complainant gave her effective consent to be struck were remote, given the particular circumstances of this case. Under *Almanza*, the record must demonstrate that the appellant has suffered *actual*, not just theoretical, harm from the erroneous jury instruction.[30] For the reasons given, we do not believe that the

---

[30] *E.g.*, *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).

appellant suffered actual egregious harm. We hold that the court of appeals erred to conclude that the appellant was deprived of a fair trial. Accordingly, we vacate the judgment of the court of appeals and remand the cause to that court to address the appellant's remaining point of error.[31]

Delivered:　　May 7, 2008
Publish

---

[31] The court of appeals found the evidence to be legally sufficient, but declined, in light of its reversal on the basis of jury-charge error, to address the appellant's claim of factual insufficiency. *Allen v. State*, *supra*, at *6-*7 & n.3.