Death Opinion









 

 



 

IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,352






CHRISTOPHER ANTHONY YOUNG, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM CAUSE NO. 2005-CR-1183 IN THE 187TH DISTRICT COURT

BEXAR COUNTY





 Price, J., filed a dissenting opinion.


DISSENTING OPINION


 I dissent to the Court's rejection of the appellant's fifteenth point of error. (1) In my
view, the record reveals both error in the jury charge given at the punishment phase of trial,
and "egregious harm" resulting from that error. I would therefore reverse the conviction and
remand the cause for a new punishment proceeding.

 Since the enactment of the statutory mitigation special issue in 1991, (2) the Legislature
has specifically required trial courts at the punishment phase of capital murder cases to
instruct jurors that they need not agree on what specific evidence, if any, proffered in
mitigation of the death penalty, is sufficient to warrant a normative judgment that life
imprisonment is a more appropriate moral response than the death penalty. So long as at
least ten jurors can agree that there are sufficient mitigating circumstances, they need not
agree which circumstance or combination of circumstances triggered their collective
normative response. Section 2f(3) of Article 37.071 of the Code of Criminal Procedure
mandates such an instruction and is the "law applicable to the case" in contemplation of
Article 36.14 of the Code of Criminal Procedure. (3) In failing to give that instruction, the trial
court plainly erred.

 To determine whether this error was egregiously harmful under Almanza v. State, (4) we
consider 1) the entirety of the punishment charge itself, 2) the evidence adduced at the
punishment phase, including the contested issues and weight of the probative evidence, 3)
the arguments of counsel, and 4) any other relevant information from the record. (5) When such
a review reveals that the error affected the very basis of the case, deprived the defendant of
a valuable right, or vitally affected a defensive theory, we conclude that the error was
egregiously harmful. (6) The harm must be shown to be "actual," not just "theoretical." (7)

 Turning first to the punishment charge as a whole, I note that the mitigation special
issue itself is ambiguous with respect to the question whether jurors have to agree that any
particular circumstance or circumstances warrant a life sentence. The verdict form that was
submitted asked the jury to supply one of two answers to the mitigation special issue:

 Answer: We, the jury, unanimously find and determine that the answer to
this Special Issue is "No".


 Answer: We, the jury, because at least ten (10) jurors find that there is a
sufficient mitigating circumstance or are sufficient mitigating
circumstances to warrant that a sentence of life imprisonment
rather than a death sentence be imposed, answer this Special
Issue "Yes".


The appellant's jurors opted for the first answer. But, contrary to the view of the majority, (8)
the jurors' unanimity with respect to their ultimate answer does not guarantee that they
unanimously rejected the existence of any mitigating circumstance or circumstances
warranting a life sentence. There remains the theoretical possibility that the jurors believed
that they could only attain unanimity with respect to whether a sufficient mitigating
circumstance or circumstances existed to warrant a life sentence (and hence, choose the first
answer) if they could all agree (or at least ten of them) that the same mitigating circumstance
or circumstances were sufficient to convince them that life was the more appropriate penalty. 
Absent the Section 2f(3) instruction, there is nothing in the special issue itself or the verdict
form to foreclose this possibility.

 Nor would anything in the balance of the punishment charge necessarily dissuade the
jurors from this view. There is language in the punishment charge pertaining to the future
dangerousness special issue that instructed the jurors that they need not all agree with respect
to what specific evidence would convince them that the appellant would not constitute a
continuing threat to society before answering that special issue "no." The conspicuous
absence of a similar instruction pertaining to the mitigation special issue could conceivably
have convinced the jurors that, in fact, they did have to agree on the specific mitigating
circumstance or circumstances before answering that special issue "yes." (9) There is nothing
else in the punishment charge as a whole that served unequivocally to inform the jurors
otherwise.

 Turning to the evidence elicited at trial, I observe that the appellant presented
evidence of a tumultuous childhood. When he was eight years old, his father was murdered
and his sister was molested and impregnated by his stepfather. The appellant argued that he
never recovered from these events emotionally as he never received the counseling or the
father figure that he needed. He became angry and withdrawn and began using drugs. There
was also evidence that at the time he committed the capital murder he was under the
influence of alcohol, marijuana and crack cocaine. It is conceivable that the jurors could
have harbored various opinions as to the mitigating value of this evidence. Some might have
believed the evidence of a disadvantaged childhood warranted a life sentence, but not the
evidence of intoxication, while others might have believed vice-versa. If at least ten jurors
believed that one or the other was mitigating, but no ten jurors could agree on either one, and
the jurors construed the special issue to require agreement as to the specific mitigating
evidence that warranted a life sentence, they could have erroneously (but unanimously)
answered the special issue "no." (10) Again, the theoretical harm is quite evident.

 During final arguments, defense counsel independently argued the mitigating
significance of both the evidence of the appellant's disadvantaged childhood and of his
intoxication at the time of the offense. For its part, the State argued that the appellant had
had other father figures in his life, and that the evidence showed the drugs and alcohol had
not affected him on the morning of the offense. The State did not suggest, however, that the
jurors would have to agree upon the specific evidence that they found sufficient to warrant
a life sentence before they could answer the mitigation special issue "yes." (11) Instead, the
State argued that none of the appellant's mitigating evidence was compelling enough to cause
the jury to exercise its normative judgment to assess a life sentence. Still, because there was
more than one kind of mitigating evidence that might independently have warranted a life
sentence, it cannot be ruled out that the question came up in the jury room whether unanimity
was required with respect to the particular mitigating circumstance or circumstances that
justified life. The jurors deliberated for just under four hours before returning their
punishment verdict. During that time they did not send out a jury note or otherwise indicate
a struggle to resolve any ambiguity in their understanding of the requirements of the
mitigation special issue. But the lack of a jury note is not determinative. It could just as
readily indicate that, in the absence of an explicit instruction, the jurors mistakenly concluded
that they did have to be unanimous as that they correctly concluded that they did not.

 The record cannot rule out, therefore, that the theoretical harm in this case did not
ripen into actual harm. We have said that there is no burden of proof when it comes to an
analysis for egregious harm. (12) In a case for egregious harm that is as close as this one, and
when the ultimate penalty is at stake, we should err on the side of caution. (13) It is clear
enough that the trial court's error deprived the appellant of a valuable right--the right to be
assured that the jurors would not deliberate upon his variable mitigating evidence under the
mistaken assumption that they must agree on which mitigating circumstance or circumstances
warranted life before finding such a sentence appropriate. I would therefore hold that the
appellant suffered egregious harm, reverse his conviction, and remand the cause for a new
punishment hearing. Because the Court does not, I respectfully dissent.


Filed: April 22, 2009

Publish
1. Majority opinion, at 39-41.
2. Acts 1991, 72nd Leg., ch. 838, § 1, eff. Sept. 1, 1991.
3. Tex. Code Crim. Proc. arts. 36.14 and 37.071, § 2f(3).
4. 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on reh'g).
5. E.g., Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).
6. Id.
7. Ngo v. State, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).
8. Majority opinion, at 40-41.
9. See Allen v. State, supra, at 264-65 ("From the fact that the self-defense instruction
contained explicit reasonable-doubt language, the jury might well infer that it should expect
to see comparably explicit reasonable-doubt language in the consent instruction if such a
standard was indeed applicable there. The conspicuous absence of such explicit language
from the consent instruction would not likely have been lost on the jurors."). 
10. Moreover, as the appellant points out, a juror who believed he had to answer the
mitigation special issue "no" unless at least ten jurors could agree that either the
disadvantaged childhood or the intoxication (or both) warranted a life sentence would not
likely cause the jury to deadlock by persisting in his own personal view that the mitigation
was sufficient, thus assuring a life sentence. See Tex. Code Crim. Proc. art. 37.07 § (g) ("If
the jury . . . is unable to answer any issue submitted under Subsection . . . (e) of this article,
the court shall sentence the defendant to confinement in the institutional division of the Texas
Department of Criminal Justice for life.").
11. Compare Ngo v. State, supra, at 750-51 (egregiously harmful jury charge error found
in failing to require jury unanimity where, inter alia, three times during course of trial judge
and prosecutor erroneously informed jurors that they need not be unanimous in their verdict
when in fact the law required them to be).
12. Warner v. State, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).
13. Cf. O'Neal v. McAninch, 513 U.S. 432 (1995) (even in context of federal habeas
review of state court judgments, where State's interest in finality is at its zenith, federal judge
who finds record in equipoise with respect to whether error is harmless should conclude that
the error is harmful).