Opinion issued September 17, 2009








 








In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00921-CR

____________


MICHAEL MARTINEZ, APPELLANT


v.


THE STATE OF TEXAS, APPELLEE


 



On Appeal from the 183rd District Court 

Harris County, Texas

Trial Court Cause No. 1050459






O P I N I O N

 Appellant, Michael Martinez, appeals from the trial court's judgment ordering
that he serve life in prison for aggravated robbery. See Tex. Penal Code Ann.
§ 29.03 (Vernon 2003). Appellant pleaded not guilty to the jury, but the jury found
him guilty and determined his sentence. In three issues, appellant contends the
evidence is factually insufficient; his attorney rendered ineffective assistance of
counsel during the voir dire phase of trial by failing to inquire whether the jurors
could consider the minimum punishment; and the trial court committed harmful error
by failing to sua sponte instruct the jury on the State's burden to prove extraneous
offenses beyond a reasonable doubt in the punishment phase of trial. We conclude 
the evidence is factually sufficient; appellant's attorney did not render ineffective
assistance during voir dire; and the failure to include the "beyond a reasonable doubt
instruction" did not egregiously harm appellant. We affirm.

Background

 Steven Kwiatkowski was an undercover narcotics officer with the Houston
Police Department (HPD). On December 15, 2005, he and another HPD officer,
Berg, went undercover to the Montrose area of Houston to purchase narcotics. They
were approached by four people in a car, one of whom was appellant. Appellant
asked if the officers were looking for a party. The officers said no. The car left but
quickly returned, and the occupants asked the officers if they wished to purchase
marijuana. When the officers responded that they wanted cocaine, appellant said they
had crack cocaine. As appellant approached the officers with Richard Garza, it
appeared to the officers that Garza was carrying a "baggie of crack." The officers
asked for $20 worth of crack.

 Instead of tendering the cocaine, appellant pulled out a pistol, placed it to
Kwiatkowski's stomach, and demanded Kwiatkowski's money. Kwiatkowski pulled
a $20 bill from his pocket and threw it to the ground. Garza, who also pulled out a
gun, picked up the money and told appellant to search Kwiatkowski. Appellant found
Kwiatkowski's police identification in Kwiatkowski's wallet. When appellant said,
"Oh, hell no," Kwiatkowski knew appellant had figured out that Kwiatkowski was
a police officer. After finding the police identification, appellant fired four shots at
Kwiatkowski, hitting him three times in the abdomen and once in the leg, shattering
the leg. To defend himself, Kwiatkowski retrieved a gun he had hidden on his body
and shot at appellant, who ran away with Garza.

 After appellant and Garza pulled guns on Kwiatkowski, Berg ran from the
scene, until he was approached by a man holding a shotgun. Berg believed the man
with the shotgun was one of the two men who had been waiting in appellant's car. 
Berg took his own gun and shot at the man with the shotgun. At this point, the
surveillance officers, who were the back-up officers for Kwiatkowski and Berg,
approached the scene. Walker, one of the surveillance officers, shot and killed the
man with the shotgun. Walker also shot another man after that man shot at Walker's
Jeep.

 Derrick was an HPD officer on routine patrol when he heard over the radio that
an officer was shot. Derrick found a pistol and Kwiatkowski's wallet in a vacant field
near where appellant and Garza were found hiding under a house. Appellant and
Garza were found after a police dog followed a scent from the scene where the
shooting occurred.

 DNA analysis was performed on Kwiatkowski's police identification and the
guns found at the scene of the shooting. Within a statistical probability, the DNA on
those items matched appellant's DNA.

 During voir dire, the State asked the venire members if they could consider the
maximum punishment, life in prison. The trial court also mentioned the range of
punishment and asked the venire members if they could consider the entire range of
punishment. Appellant's counsel, however, did not ask any questions concerning the
range of punishment during his questioning of the panel at voir dire.

 After appellant was found guilty of aggravated robbery by the jury, both sides
presented evidence in the sentencing phase of trial. The State presented evidence of
appellant's prior convictions, appellant's unadjudicated extraneous offenses, as well
as evidence concerning how the shooting affected Kwiatkowski. However, the jury
charge in the punishment phase of trial did not include an instruction that extraneous
offenses must be proven beyond a reasonable doubt before the jury could consider the
evidence of the extraneous offenses. 

 After appellant was sentenced, he was appointed appellate counsel who filed
an Anders brief stating that no valid grounds for appeal existed and that appellant's
appeal was frivolous. See Anders v. California, 386 U.S. 738, 744, 87 S. Ct. 1396,
1400 (1967). Appellant filed a pro se response raising four issues. Faced with the
Anders brief, the State waived the opportunity to file an appellee's brief.

 In January 2009, we issued an order abating the appeal after determining that
arguable grounds for appeal exist. We granted appellant's appointed counsel's
motion to withdraw. We remanded the cause for the trial court to appoint new
appellate counsel or, if appellant wished, to allow appellant to proceed pro se. We
did not rule on the ultimate merits of the issues raised by appellant in his pro se
response. In our order, we stated, "When we identify issues that counsel on appeal
should have addressed but did not, we need not be able to say with certainty that
those issues have merit; we need only say that the issues warrant further development
by counsel on appeal."

 Following our abatement order, the trial court appointed new counsel who has
filed a brief presenting the three issues before us in this appeal. We therefore now
address the merits of the issues raised by new counsel in this appeal. 

Factual Sufficiency of Evidence

 In his third issue, appellant contends the evidence is factually insufficient to
support the jury's finding of guilt for aggravated robbery. Specifically, appellant
asserts the evidence presented at trial does not support a finding beyond a reasonable
doubt that a gunshot by appellant caused the injury of Kwiatkowski. Appellant
asserts the verdict is against the great weight and preponderance of the evidence by
pointing to (1) the rapidity of the events and (2) the testimony at trial, particularly that
of Kwiatkowski, that does not clearly establish the number of shots fired by Garza
and by appellant. 

 A person commits aggravated robbery when he commits robbery and he causes
serious bodily injury to another or uses or exhibits a deadly weapon. Tex. Penal
Code Ann. § 29.03(a)(2) (Vernon 2003). A person commits robbery if, in the course
of committing theft and with intent to obtain or maintain control of the property, he
intentionally or knowingly threatens or places another in fear of imminent bodily
injury or death. Id. § 29.02(a)(2). "In the course of committing theft" means conduct
that occurs in an attempt to commit theft, during the commission of theft, or in
immediate flight after the commission of theft. Id. § 29.01(1). A person commits
theft if he unlawfully appropriates property with the intent to deprive the owner of the
property. Id. § 31.03(a) (Vernon Supp. 2008). A firearm is considered a deadly
weapon. See id. § 1.07(a)(17)(A).

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005); 
Hoang v. State, 263 S.W.3d 18, 23 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). 
We will set aside the verdict only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under
the first prong of Johnson, we cannot conclude that a conviction is "clearly wrong"
or "manifestly unjust" simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury. Watson, 204 S.W.3d at 417. 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also discuss
the evidence that, according to the appellant, most undermines the jury's verdict. 
Sims v. State, 99 S.W.3d 600, 603-04 (Tex. Crim. App. 2003).

 Appellate courts should afford almost complete deference to a jury's decision 
when that decision is based upon an evaluation of credibility. See Lancon v. State,
253 S.W.3d 699, 705-07 (Tex. Crim. App. 2008). The jury is in the best position to
judge the credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court who relies on the cold record. Id. The jury may choose
to believe some testimony and disbelieve other testimony. Id.

 Appellant challenges the reliability of Kwiatkowski's testimony by pointing
to an inconsistency in Kwiatkowski's testimony concerning the sequence of the
events. Appellant also challenges the reliability of Kwiatkowski's testimony because
Kwiatkowski acknowledged he was uncertain as to how many shots appellant fired. 
Kwiatkowski testified that appellant pulled out a pistol, placed it to Kwiatkowski's
stomach, and demanded money before appellant found Kwiatkowski's police
identification. Kwiatkowski, however, also testified during cross-examination that
appellant pulled out his pistol and pointed it at Kwiatkowski after Officer Berg
attempted to hand Garza a $20 bill. 

 While Kwiatkowski's testimony is conflicting as to when appellant pulled out
his pistol, when viewed in a neutral light, the evidence shows that appellant pulled
out his pistol either before he demanded money from Kwiatkowski or before he took
Kwiatkowski's wallet. Regardless of when appellant pulled out his pistol, the
undisputed evidence shows that appellant, in the course of committing theft of
Kwiatkowski's property, exhibited a firearm, which is all that is required to establish
the offense of aggravated robbery. See Tex. Pen. Code Ann. §§ 1.07(a)(17)(A),
29.02-.03. Furthermore, other evidence supports Kwiatkowski's testimony
concerning the events that occurred. Officer Derrick found a pistol and
Kwiatkowski's wallet in a vacant field near where appellant was arrested. Appellant
did not present evidence at trial about the events giving rise to his conviction.

 Appellant's challenge to the factual sufficiency of the evidence is based on the
credibility of witnesses and the weight to give their testimony, issues on which we
must defer to the jury. See Lancon, 253 S.W.3d at 705. When viewed in a neutral
light, the evidence tending to prove that appellant is guilty of aggravated robbery is
not so weak as to render the jury's verdict clearly wrong or manifestly unjust. See
Johnson, 23 S.W.3d at 11. Furthermore, when viewed in a neutral light, the verdict
is not against the great weight and preponderance of the evidence that appellant
committed the offense of aggravated robbery. Id.

 We overrule appellant's third issue.

Ineffective Assistance of Counsel During Voir Dire 

 In his first issue, appellant contends his trial counsel was ineffective because
his attorney did not conduct meaningful voir dire, in that he failed to ask jurors if they
could consider the minimum punishment if appellant were found guilty.

 To prevail on a claim of ineffective assistance of counsel, the defendant must
show that trial counsel's performance was deficient and a reasonable probability
exists that the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984). The first
prong of the Strickland test requires the defendant to show that counsel's
performance fell below an objective standard of reasonableness. Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We look to the totality of the
representation and to the circumstances of the case, not to isolated errors. Robertson
v. State, 187 S.W.3d 475, 483-84 (Tex. Crim. App. 2006). Thus, the defendant must
prove objectively, by a preponderance of the evidence, that trial counsel's
representation as a whole fell below professional standards. Id.; Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002). The second prong requires that the
defendant show "a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different." Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068; Thompson, 9 S.W.3d at 812. Because the reviewing court
must indulge a strong presumption that counsel's conduct falls within the wide range
of reasonable professional assistance, the defendant must overcome the presumption
that, under the circumstances, the challenged action "might be considered sound trial
strategy." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. We review voir dire by
appellant's trial counsel in its entirety in ruling on appellant's claim of ineffective
assistance of counsel. See Robertson, 187 S.W.3d at 483-84; Granados v. State, 85
S.W.3d 217, 231 (Tex. Crim. App. 2002); Rische v. State, 834 S.W.2d 942 (Tex.
App.--Houston [1st Dist.] 1992, pet. ref'd). 

 We cannot conclude that appellant has shown that counsel's performance fell
below an objective standard of reasonableness. See Thompson, 9 S.W.3d at 812. As
the record is silent on trial counsel's reasoning or strategy in refraining from
discussing or questioning about the jury's consideration of the minimum punishment,
we presume that his action was strategic. See Thompson, 9 S.W.3d at 814; Apolinar
v. State, 106 S.W.3d 407, 416 (Tex. App.--Houston [1st Dist.] 2003), aff'd 155
S.W.3d 184 (Tex. Crim. App. 2005). This is not one of those rare cases where no
attorney would have engaged in the conduct. Cf. Miles v. State, 644 S.W.2d 23, 24
(Tex. App.--El Paso 1982, no pet.) (holding that counsel rendered ineffective
assistance by, among other actions, "not ask[ing] the jury a single question on voir
dire"). The record shows the topic of the range of punishment was extensively
covered during voir dire. Although the defense attorney did not personally voir dire
about the range of punishment, the trial court and the prosecutor both questioned the
jury about the full range of punishment. In discussing the punishment range with the
venire members, the court stated 

 All I want to know is this, a commitment from each of you that you can
consider the full range of punishment; the low end, the medium and the
high end, depending on the facts and circumstances that you hear today.
Can you tell us that you will keep an open mind and wait but consider
the full range of punishment? 


 Furthermore, the record shows that the State discussed the punishment range with the
prospective jury, stating that "juries in Texas ought to be able to consider the full
range of punishment, all the way from five years in prison to 99 years or life in
prison." Because both the trial court and the State discussed the entire range of
punishment with the jury prior to the voir dire examination by appellant's trial
counsel, counsel could have reasonably determined further inquiry into the
punishment range was unnecessary. Cf. Hines v. State, 144 S.W.3d 90, 97-9 (Tex.
App.--Fort Worth 2004, no pet.) (holding that counsel did not render ineffective
assistance by only asking venire members whether they could "be fair to both sides"
after State's voir dire discussion of full range of punishment). Moreover, the record
shows appellant's trial counsel asked the venire during voir dire about their feelings
about self-defense, police officers, the crime lab in Houston, the presumption of
innocence, and other issues related to the case.

 We hold appellant has not established the first prong of the Strickland test
because appellant has not shown that counsel's performance fell below an objective
standard of reasonableness. See Thompson, 9 S.W.3d at 812. Because appellant has
not established the first prong of the Strickland test, we need not address the second
prong of the test. Id.; Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

 We overrule appellant's first issue.

Failure to Instruct on Burden of Proof in Punishment Phase 

 In his second issue, appellant contends the trial court committed harmful error
in the sentencing phase of trial by failing to sua sponte instruct the jury that it could
not consider evidence of an extraneous offense unless it first determined that the
commission of the extraneous offense was proven beyond a reasonable doubt.

 A. Standard of Review for Charge Error

 In determining whether there is reversible error in the jury charge, we first
decide whether error exists, and if error exists, then we determine whether the
defendant was harmed. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App.
2003); Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). The
appellate court must apply the egregious harm standard to review an erroneous jury
charge when the defendant's counsel failed to object to the charge, as in this case. 
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If appellant's
counsel did not make a proper objection at trial, appellant "will obtain a reversal only
if the error was so egregiously harmful that he has not had a fair and impartial trial." 
Id.

 B. Extraneous Offense Burden of Proof Charge Is Required

 The Texas Code of Criminal Procedure provides that "evidence may be offered
by the State and the defendant as to any matter the court deems relevant to sentencing,
including . . . any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant or
for which he could be held criminally responsible, regardless of whether he has been
charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(a)(1) (Vernon Supp. 2008). Whether or not the defendant requests the
instruction, the trial court must instruct the jury in the punishment phase of trial that
extraneous offenses must be proven beyond a reasonable doubt. Huizar v. State, 12
S.W.3d 479, 484 (Tex. Crim. App. 2000). The trial court is required to give the
instruction to the jury as the law of the case. Id. Therefore, appellant's failure to
object to the jury charge at trial does not waive error; rather, the court's failure to give
the instruction is subject to the egregious harm analysis. Id.; Graves v. State, 176
S.W.3d 422, 435 (Tex. App.--Houston [1st Dist] 2004, pet. struck).

 C. Error Analysis

 In the punishment phase of trial, the State introduced appellant's prior
convictions as a juvenile and as an adult, as well as testimony about unadjudicated
offenses committed by appellant. Appellant did not refute the punishment evidence;
the sole challenge was the observation that the unadjudicated extraneous misconduct
had not resulted in convictions.

 The State introduced a judgment sentencing appellant to the custody of the
Texas Youth Commission (TYC) for engaging in delinquent conduct. The delinquent
conduct occurred August 16, 2000, when appellant, as a juvenile, committed the
offense of fleeing from a police officer on two occasions. In explaining the
continuum of sanctions that result in a juvenile being sent to the TYC, a Harris county
prosecutor testified that appellant was initially sent to the custody of his parents after
his first arrest for evading arrest, but appellant's custody level was raised after his
later arrest for evading arrest. A Harris county juvenile probation officer testified
that, while in the custody of the Burnett Bayland Reception Center, appellant was
placed on probation for evading arrest, but that probation was revoked when the trial
court sentenced appellant to TYC for the later offense of evading arrest. 

 The State introduced the judgments for appellant's convictions after he became
an adult, which were convictions for carrying a weapon on August 24, 2003 and for
unauthorized use of a motor vehicle on November 7, 2003. The State also introduced
testimonial evidence describing the facts underlying the convictions. Concerning the
carrying a weapon conviction, the State limited the description of appellant's
misconduct on that day to that offense only. In describing the circumstances
underlying the unauthorized use conviction, however, the State described not only the
unauthorized use circumstances, but also additional misconduct by appellant. Officer
Fibich explained that when he attempted to stop the car appellant was driving at four
in the morning, appellant and his passenger fled running from their car when their car
stopped. Officer Fibich chased them and they were arrested after a search that lasted
over an hour. Officer Fibich found a loaded .22 caliber handgun between the center
console and the passenger compartment of the car appellant had driven. Officer
Fibich testified that appellant was charged with carrying a weapon, evading arrest,
and unauthorized use of a motor vehicle, but, at trial, the State introduced the
conviction for the unauthorized use only. The record before us does not show the
dispositions of the carrying a weapon and evading arrest charges. 

 The State introduced testimonial evidence describing facts of an August 2005
assault by appellant on Lucy DeJesus, the mother of his child. DeJesus testified that
in the presence of her young daughter, appellant became upset with DeJesus and
choked DeJesus until she passed out. The responding police officer saw red marks
on DeJesus's neck. DeJesus testified that she was assaulted by appellant more than
ten times during the course of their relationship. DeJesus also denied receiving any
financial support from appellant to care for their daughter. 

 The trial court did not err by failing to include a burden of proof instruction for
the evidence concerning the offenses that resulted in the prior convictions. Bluitt v.
State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) ("While the prior convictions must
be properly proved, to require that prior convictions be re-proved beyond a
reasonable doubt would be an absurd result, as the very fact of conviction is evidence
that the burden of proving guilt beyond a reasonable doubt has already been met in
a prior proceeding."). The trial court did err, however, in failing to include a burden
of proof instruction concerning the unadjudicated offenses introduced in the
punishment phase of trial, which include evidence that appellant assaulted DeJesus
in August 2005, appellant committed other assaults on DeJesus, and appellant drove
a stolen car on the night Kwiatkowski was shot. Appellant was entitled to an
instruction that the unadjudicated extraneous offenses must be proven beyond a
reasonable doubt before the jury can consider them. Huizar, 12 S.W.3d at 484. We
hold the trial court's charge was erroneous by failing to include the burden of proof
instructions for unadjudicated extraneous offenses admitted in the punishment phase
of trial. Id.

 D. Harm Analysis

 Having determined that the trial court erred by failing to charge the jury as
required, we examine the record to determine whether appellant was egregiously
harmed. Almanza, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous
charge must be "assayed in light of (1) the entire jury charge, (2) the state of the
evidence, (3) the argument of counsel and (4) any other relevant information revealed
by the record of the trial as a whole." Id.; Ngo v. State, 175 S.W.3d 738, 750 n.48
(Tex. Crim. App. 2005). Jury charge error is egregiously harmful if "it affects the
very basis of the case, deprives the defendant of a valuable right, or vitally affects a
defensive theory." Stuhler v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)
(citing Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). We engage in
this assessment to illuminate the actual, not just theoretical, harm to the accused. 
Almanza, 686 S.W.2d at 174. Furthermore, egregious harm is a difficult standard to
meet and must be determined on a case-by-case basis. See Hutch, 922 S.W.2d at 171.

 1. The Entirety of the Charge

 Although the trial court failed to instruct the jury to not consider the extraneous
evidence unless it was proven beyond a reasonable doubt, the charge in the
sentencing phase of the trial generally told the jury that the State had the burden of
proof throughout the trial. The trial court's charge to the jury stated, "The burden of
proof in all criminal cases rests upon the State throughout the trial and never shifts
to the defendant." However, the general charge did not specifically address the
burden of proof for unadjudicated extraneous offenses. We conclude that the general
charge instructing the jury that the State has the burden of proof throughout the trial
is a circumstance that weighs neither for or against a finding of egregious harm. 

 2. The Evidence

 In examining whether egregious harm occurred from the failure to include the
burden of proof instruction for unadjudicated extraneous offenses admitted in the
punishment phase of trial, we consider whether the evidence was clear, strong, direct
and unimpeached. See Zarco v. State, 210 S.W.3d 816, 824-25 (Tex. App.--Houston
[14th Dist.] 2006, no pet.) (concluding that "clear, direct, and unimpeached
testimony" during guilt-innocence phase of trial contributed to finding that defendant
was not egregiously harmed by lack of sentencing phase instruction regarding burden
of proof for extraneous offenses).

 Appellant did not present any evidence challenging the State's version of the
unadjudicated offenses. The unadjudicated offenses were that appellant assaulted
DeJesus numerous times, appellant used a stolen car the night Kwiatkowski was shot,
and appellant illegally carried a weapon and evaded arrest in November 2003. (1) The
only point made by appellant's attorney was that these unadjudicated offenses did not
result in convictions. 

 Although the jury charge did not include the instruction that the State had to
prove the unadjudicated offenses beyond a reasonable doubt before the jury could
consider them, the jury likely believed beyond a reasonable doubt the evidence
concerning the unadjudicated offenses because the evidence showing that the
unadjudicated extraneous offenses occurred was clear, strong, direct and
unimpeached. See id. The inclusion of the jury charge, therefore, would not have
made a difference in how the jury considered the evidence. See id.

 In examining whether egregious harm occurred from the failure to include the
burden of proof instruction for unadjudicated extraneous offenses admitted in the
punishment phase of trial, we also compare the evidence related to the unadjudicated
extraneous offenses with the other guilt and punishment evidence in the case. See
Escovedo v. State, 902 S.W.2d 109, 115 (Tex. App.--Houston [1st Dist.] 1995, pet.
ref'd) (finding no indication that jury would have "disregarded or discounted the
extraneous offense[s] and assessed a lighter sentence with a burden of proof
instruction"); Yates v. State, 917 S.W.2d 915, 923 (Tex. App.--Corpus Christi 1996,
pet. ref'd) (holding that if only one extraneous offense is contested, failure to give
burden of proof instruction does not create egregious harm when numerous other
extraneous offenses are included in testimony).

 In light of the evidence of appellant's guilt for aggravated robbery in this case,
which involves the serious injury to a police officer, the death of appellant's co-actor,
appellant's long criminal history, and appellant's numerous encounters with the
police, the evidence concerning the unadjudicated offenses does not make the case
for punishment clearly more persuasive. Compare Allen v. State, 253 S.W.3d 260,
267-68 (Tex. Crim. App. 2008) (finding no egregious harm when case for
punishment was not made clearly more persuasive by error) with Ellison v. State, 97
S.W.3d 698, 701 (Tex. App.--Texarkana 2003, no pet.) (holding that appellant was
egregiously harmed because sentence could have been substantially affected by
evidence that he committed hate crimes). There is no indication that jury would have
disregarded or discounted the unadjudicated extraneous offenses and assessed a
lighter sentence had a burden of proof instruction been included in the jury charge. 
See Escovedo, 902 S.W.2d at 115. We conclude that evidence presented by the State
of extraneous offenses, in light of appellant's entire criminal record and the jury's
acceptance of the State's version of events in its finding appellant guilty of
aggravated robbery, weighs against a finding of egregious harm. See Zarco, 210
S.W.3d at 824-25.

 3. Arguments of Counsel

 Although the State referred to appellant's unadjudicated extraneous offenses
in its closing arguments to the jury, the offenses were included as part of a general
theme of appellant's character in the State's argument that appellant has "no respect
for anyone or anything but himself." The State used the extraneous offenses to create
a pattern of appellant "getting progressively more and more violent," "evading yet
again, running from the police," and "committing crime after crime after crime." The
State asked for a sentence of life in prison for appellant, in order to "protect [the jury]
and all of us from him." The State, however, did not rely solely on the extraneous
offense evidence to argue for a life sentence. Instead, the State also emphasized the
violent nature of the offense, the fact that the complainant was a police officer, and
the fact that appellant's action of pulling a gun "put [the] chain of events into motion"
that resulted in injury to Kwiatkowski.

 Appellant's counsel argued that while appellant "deserved to be punished," the
jury should "[l]ook at the facts of this case, look at everything in [appellant's] life,"
to determine what sentence is "fair" before giving appellant a life sentence. 
Appellant's counsel's sole challenge to the existence of the unadjudicated offenses
was that the conduct did not result in criminal arrests or convictions.

 We conclude that the arguments of counsel, in light of appellant's entire
criminal record, the jury's acceptance of the State's version of events in its finding
appellant guilty of aggravated robbery, and the failure by appellant to mount any
serious challenge to the existence of the unadjudicated extraneous offenses, weighs
against a finding of egregious harm.

 4. Other Relevant Information 

 In addressing other relevant information, we may consider the severity of the
punishment assessed, which may indicate egregious harm in some situations. See
Bolden v. State, 73 S.W.3d 428, 432 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd). In this case, appellant received a life sentence, the maximum allowed. 
However, a maximum punishment alone does not indicate egregious harm. See
Huizar, 12 S.W.3d at 484. There is no egregious harm if the jury would still have
assessed a life sentence, even if properly instructed to consider only extraneous
offenses if they first found that appellant had committed those offenses beyond a
reasonable doubt. See Allen, 253 S.W.3d at 267-68.

 The record, exclusive of the unadjudicated acts of misconduct by appellant
presented at the punishment phase of the trial, suggests the jury would have assessed
the same sentence. See id. According to the record, appellant pulled out a pistol,
placed it to Kwiatkowski's stomach, and demanded his money. After realizing that
Kwiatkowski was a police officer, appellant fired four shots at Kwiatkowski, hitting
him three times in the abdomen and once in the leg, causing his leg to shatter. 
Furthermore, appellant has a lengthy criminal record, including pleas of guilty to two
evading arrests committed as a juvenile, juvenile probation that was revoked to
confinement in the TYC, a conviction as an adult for carrying a weapon, and a
conviction as an adult for the felony of unauthorized use of a motor vehicle. Thus,
even if the jury had been properly instructed, it would likely have reached the same
result due to the serious injuries to Kwiatkowski and the many prior convictions. See
id.

 We conclude that the life sentence given by the jury, in light of appellant's
criminal record and the circumstances of the shooting, weigh against a finding of
egregious harm.

 E. No Finding of Egregious Harm

 In determining whether appellant was egregiously harmed, the harm which we
must consider is the impact of the omission of a reasonable doubt instruction
concerning the unadjudicated offenses. See Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002). Based on our review of the record and the Almanza factors,
we cannot conclude that appellant was denied a fair and impartial trial in the jury's
determination assessing a life sentence because the State presented uncontested
evidence of appellant's many prior convictions spanning a number of years of
appellant's life; the State presented largely uncontested evidence of appellant's
unadjudicated extraneous offenses challenged only by the fact that the offenses did
not result in arrests or convictions; and the offense for which appellant was convicted
was a violent crime to a police officer in an event that caused another person's death. 
Id.; see Almanza, 686 S.W.2d at 178; Yates, 917 S.W.2d at 923 (holding that,
although some harm may have resulted from error, it was not egregious harm because
State presented overwhelming and uncontested evidence of many other violent acts
for jury to consider that justified life sentence and because there was no evidence that
extraneous offenses made case for punishment more persuasive).

 We hold that the omission of the required jury instruction did not egregiously
harm appellant. We overrule appellant's second issue.Conclusion

 We affirm the judgment of the trial court. 


 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Publish. Tex. R. App. P. 44.2(b).
1. In his appellate brief, appellant does not complain that the trial court erred by
failing to give a burden of proof instruction for the unadjudicated extraneous
offense evidence that appellant illegally carried a weapon and evaded arrest in
November 2003. We include this offense in the harm analysis because it is the
appellate court's duty to assess non-constitutional harm after a review of the record
as a whole. Schutz v. State, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).