

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,352

**CHRISTOPHER ANTHONY YOUNG, Appellant**

**v.**

**THE STATE OF TEXAS**

ON DIRECT APPEAL
FROM CAUSE NO. 2005-CR-1183 IN THE 187TH DISTRICT COURT
BEXAR COUNTY

**PRICE,  J., filed a dissenting opinion.**

### DISSENTING OPINION

I dissent to the Court's rejection of the appellant's fifteenth point of error.[1]  In my view, the record reveals both error in the jury charge given at the punishment phase of trial, and "egregious harm" resulting from that error.  I would therefore reverse the conviction and remand the cause for a new punishment proceeding.

---

[1]  Majority opinion, at 39-41.

Since the enactment of the statutory mitigation special issue in 1991,[2] the Legislature has specifically required trial courts at the punishment phase of capital murder cases to instruct jurors that they need not agree on what specific evidence, if any, proffered in mitigation of the death penalty, is sufficient to warrant a normative judgment that life imprisonment is a more appropriate moral response than the death penalty. So long as at least ten jurors can agree that there *are* sufficient mitigating circumstances, they need not agree which circumstance or combination of circumstances triggered their collective normative response. Section 2f(3) of Article 37.071 of the Code of Criminal Procedure mandates such an instruction and is the "law applicable to the case" in contemplation of Article 36.14 of the Code of Criminal Procedure.[3] In failing to give that instruction, the trial court plainly erred.

To determine whether this error was egregiously harmful under *Almanza v. State*,[4] we consider 1) the entirety of the punishment charge itself, 2) the evidence adduced at the punishment phase, including the contested issues and weight of the probative evidence, 3) the arguments of counsel, and 4) any other relevant information from the record.[5] When such

---

[2] Acts 1991, 72nd Leg., ch. 838, § 1, eff. Sept. 1, 1991.

[3] TEX. CODE CRIM. PROC. arts. 36.14 and 37.071, § 2f(3).

[4] 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on reh'g).

[5] *E.g.*, *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

a review reveals that the error affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory, we conclude that the error was egregiously harmful.[6] The harm must be shown to be "actual," not just "theoretical."[7]

Turning first to the punishment charge as a whole, I note that the mitigation special issue itself is ambiguous with respect to the question whether jurors have to agree that any particular circumstance or circumstances warrant a life sentence. The verdict form that was submitted asked the jury to supply one of two answers to the mitigation special issue:

> **Answer:** We, the jury, unanimously find and determine that the answer to this Special Issue is "No".

> **Answer:** We, the jury, because at least ten (10) jurors find that there is a sufficient mitigating circumstance or are sufficient mitigating circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed, answer this Special Issue "Yes".

The appellant's jurors opted for the first answer. But, contrary to the view of the majority,[8] the jurors' unanimity with respect to their ultimate answer does not guarantee that they unanimously rejected the existence of any mitigating circumstance or circumstances warranting a life sentence. There remains the theoretical possibility that the jurors believed that they could only attain unanimity with respect to whether a sufficient mitigating

---

[6] *Id.*

[7] *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005).

[8] Majority opinion, at 40-41.

circumstance or circumstances existed to warrant a life sentence (and hence, choose the first answer) if they could *all* agree (or at least ten of them) that the *same* mitigating circumstance or circumstances were sufficient to convince them that life was the more appropriate penalty. Absent the Section 2f(3) instruction, there is nothing in the special issue itself or the verdict form to foreclose this possibility.

Nor would anything in the balance of the punishment charge necessarily dissuade the jurors from this view. There is language in the punishment charge pertaining to the future dangerousness special issue that instructed the jurors that they need not all agree with respect to what specific evidence would convince them that the appellant would *not* constitute a continuing threat to society before answering that special issue "no." The conspicuous absence of a similar instruction pertaining to the mitigation special issue could conceivably have convinced the jurors that, in fact, they *did* have to agree on the specific mitigating circumstance or circumstances before answering that special issue "yes."[9] There is nothing else in the punishment charge as a whole that served unequivocally to inform the jurors otherwise.

Turning to the evidence elicited at trial, I observe that the appellant presented evidence of a tumultuous childhood. When he was eight years old, his father was murdered

---

[9] *See Allen v. State*, *supra*, at 264-65 ("From the fact that the self-defense instruction contained explicit reasonable-doubt language, the jury might well infer that it should expect to see comparably explicit reasonable-doubt language in the consent instruction if such a standard was indeed applicable there. The conspicuous absence of such explicit language from the consent instruction would not likely have been lost on the jurors.").

and his sister was molested and impregnated by his stepfather. The appellant argued that he never recovered from these events emotionally as he never received the counseling or the father figure that he needed. He became angry and withdrawn and began using drugs. There was also evidence that at the time he committed the capital murder he was under the influence of alcohol, marijuana and crack cocaine. It is conceivable that the jurors could have harbored various opinions as to the mitigating value of this evidence. Some might have believed the evidence of a disadvantaged childhood warranted a life sentence, but not the evidence of intoxication, while others might have believed vice-versa. If at least ten jurors believed that *one or the other* was mitigating, but no ten jurors could agree on *either one*, and the jurors construed the special issue to require agreement as to the specific mitigating evidence that warranted a life sentence, they could have erroneously (but unanimously) answered the special issue "no."[10] Again, the *theoretical* harm is quite evident.

During final arguments, defense counsel independently argued the mitigating significance of both the evidence of the appellant's disadvantaged childhood and of his intoxication at the time of the offense. For its part, the State argued that the appellant had

---

[10] Moreover, as the appellant points out, a juror who believed he had to answer the mitigation special issue "no" unless at least ten jurors could agree that either the disadvantaged childhood or the intoxication (or both) warranted a life sentence would not likely cause the jury to deadlock by persisting in his own personal view that the mitigation was sufficient, thus assuring a life sentence. *See* TEX. CODE CRIM. PROC. art. 37.07 § (g) ("If the jury . . . is unable to answer any issue submitted under Subsection . . . (e) of this article, the court shall sentence the defendant to confinement in the institutional division of the Texas Department of Criminal Justice for life.").

had other father figures in his life, and that the evidence showed the drugs and alcohol had not affected him on the morning of the offense. The State did *not* suggest, however, that the jurors would have to agree upon the specific evidence that they found sufficient to warrant a life sentence before they could answer the mitigation special issue "yes."[11] Instead, the State argued that *none* of the appellant's mitigating evidence was compelling enough to cause the jury to exercise its normative judgment to assess a life sentence. Still, because there was more than one kind of mitigating evidence that might independently have warranted a life sentence, it cannot be ruled out that the question came up in the jury room whether unanimity was required with respect to the particular mitigating circumstance or circumstances that justified life. The jurors deliberated for just under four hours before returning their punishment verdict. During that time they did not send out a jury note or otherwise indicate a struggle to resolve any ambiguity in their understanding of the requirements of the mitigation special issue. But the lack of a jury note is not determinative. It could just as readily indicate that, in the absence of an explicit instruction, the jurors mistakenly concluded that they *did* have to be unanimous as that they correctly concluded that they did *not*.

The record cannot rule out, therefore, that the theoretical harm in this case did not ripen into actual harm. We have said that there is no burden of proof when it comes to an

---

[11] *Compare Ngo v. State*, *supra*, at 750-51 (egregiously harmful jury charge error found in failing to require jury unanimity where, *inter alia*, three times during course of trial judge and prosecutor erroneously informed jurors that they need *not* be unanimous in their verdict when in fact the law required them to be).

analysis for egregious harm.[12]  In a case for egregious harm that is as close as this one, and when the ultimate penalty is at stake, we should err on the side of caution.[13]  It is clear enough that the trial court's error deprived the appellant of a valuable right—the right to be assured that the jurors would not deliberate upon his variable mitigating evidence under the mistaken assumption that they must agree on which mitigating circumstance or circumstances warranted life before finding such a sentence appropriate.  I would therefore hold that the appellant suffered egregious harm, reverse his conviction, and remand the cause for a new punishment hearing.  Because the Court does not, I respectfully dissent.

Filed:          April 22, 2009
Publish

---

[12]

*Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008).

[13]

*Cf. O'Neal v. McAninch*, 513 U.S. 432 (1995) (even in context of federal habeas review of state court judgments, where State's interest in finality is at its zenith, federal judge who finds record in equipoise with respect to whether error is harmless should conclude that the error is harmful).