

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00044-CR

**DAVID SAMARIPAS, JR.,**

                                                     **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                     **Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 07-06200-CRF-272

## MEMORANDUM OPINION

David Samaripas, Jr. appeals from his conviction for the offense of Engaging in Organized Criminal Activity.  TEX. PEN. CODE ANN. § 71.02 (Vernon Supp. 2009).  He elected to have the jury assess punishment.  After Samaripas pled not true to two enhancements, the jury found the enhancements true, and based on the jury's verdict the trial court sentenced Samaripas to confinement for fifty (50) years in the Texas Department of Criminal Justice – Institutional Division.  TEX. PEN. CODE ANN. § 12.42 (Vernon Supp. 2009).  Samaripas contends that the evidence was legally insufficient to prove that he committed the offense of engaging in organized criminal activity with the

intent to establish, maintain, or participate as a gang member, that the evidence was legally insufficient to prove that he committed the offense of deadly conduct as alleged in the indictment, that he suffered egregious harm from the trial court's omission of one element of the offense of engaging in organized criminal activity, and that his sentence was unlawfully enhanced. Because we find that Samaripas was egregiously harmed by errors in the charge to the jury, we reverse and remand for a new trial.

### Legal Insufficiency

In his first issue, Samaripas complains that the evidence was legally insufficient to establish that he committed the offense of engaging in organized criminal activity in that there was insufficient evidence to prove that he shot at the residence in question with the intent to establish, maintain, or participate as a member of a gang. In his second issue, he complains that the evidence was legally insufficient to establish that he committed the offense of deadly conduct as alleged by the State in the indictment.

### Standard of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled to accept one version of the facts and reject another, or reject any part of a witness's testimony. *Margraves*, 34 S.W.3d at 919. Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). It is not necessary that each fact point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

### *The Facts Relating to Engaging in Organized Criminal Activity*

We will address the relevant facts as necessary to our legal sufficiency review for each issue separately. Our recitation of the facts is given from a view most favorable to the judgment. *See Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Samaripas was shot at a club in a known gang neighborhood approximately one month before the offense in the instant case. The injuries sustained in that shooting resulted in Samaripas having a colostomy, which required the use of a bag. A member of the Surenos gang was eventually arrested for that shooting. The Surenos gang and the Latin Kings were known to be enemies. Samaripas was an admitted member of the Latin Kings at one time; however, Samaripas denied membership at the time of the incident.

In the early morning hours of October 5, 2007, a drive-by shooting occurred whereby approximately eleven shots were fired in the general direction of a residence. The shots were heard by a patrol officer, who immediately drove to the scene. A visitor to the residence and a resident of the home gave the police a description of the vehicle from which the shots had originated. The police shortly thereafter located a vehicle matching the description given by the witnesses, began pursuit, and at some point during the chase, the officer observed something being tossed out of the passenger-side

window of the vehicle. When the vehicle was ultimately stopped, Samaripas was determined to be in the front passenger seat. Another alleged member of the Latin Kings was the driver of the vehicle.

The residence that was fired upon was the residence of the individual that would later be arrested for shooting Samaripas. Casings from the firearm were located on the ground at the residence. After a search of the area where the item had been thrown during the high-speed chase, a bag used for colostomies was located that contained a semiautomatic 9 millimeter firearm, an empty clip and two loaded clips, and a cell phone. The casings located at the scene were later matched to the firearm located in the bag by ballistics expert testimony.

According to the State's gang expert, there are five indicators of gang membership. If two indicators are present, law enforcement considers that an individual is a gang member. Four of the five indicators were present relating to Samaripas. They were: admitted gang membership, information supplied by an informant, his tattoos, and being with a gang member during the commission of a criminal offense, which is consistent with gang activity. Three of the five indicators of gang membership were present with the driver of the vehicle.

The Latin Kings are a national gang, and were active at the time of the offense in Bryan, where the shooting took place. Their primary activities are narcotics trafficking and retaliatory, assaultive-type offenses, which includes deadly conduct. Samaripas had several tattoos on his person which were associated with the Latin Kings. Although Samaripas denied gang affiliation at the time of the drive-by shooting,

according to the officer who interviewed him, he referred to the Latin Kings as "us" in his oral statement to the police after his arrest. Samaripas demonstrated significant knowledge of the Latin Kings, knew that the Surenos gang consisted mostly of illegal aliens from Mexico, was overtly hostile regarding illegal aliens, and knew that there was significant hatred between the Surenos and the Latin Kings.

We find that the evidence before the jury is sufficient to sustain the jury's necessary inferences that Samaripas was acting with the intent to establish, maintain, or participate as a member of a gang, and that those inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. We overrule issue one.

Samaripas also complains that the evidence was legally insufficient for the jury to have found that he committed the offense of Deadly Conduct. *See* TEX. PEN. CODE ANN. § 22.05 (Vernon Supp. 2009). There are two methods by which felony deadly conduct may be alleged. The first is by knowingly discharging a firearm "at or in the direction of one or more individuals." TEX. PEN. CODE ANN. § 22.05(b)(1), (e). The second is by knowingly discharging a firearm "at or in the direction of a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PEN. CODE ANN. § 22.05(b)(2). The indictment alleges deadly conduct by knowingly discharging a firearm at individuals, and then lists ten specific names of persons. Samaripas contends that the evidence was legally insufficient to show that Samaripas was aware or reasonably certain that individuals were in the home at the time of the shooting.

*The Facts Relating to Deadly Conduct*

The shooting took place at approximately 1:30 a.m. Four vehicles were parked outside of the residence at the time of the shooting. Samaripas does not dispute that shots were fired in the direction of the residence. There were approximately ten adults and four children in and outside of the residence. There was a person outside who had just left the residence who was a known member of another rival gang of the Latin Kings, although it was not clear whether or not she was visible from the shooter's vehicle. She testified that she saw an SUV approach with its lights off, heard the initial shots, and ducked down behind a vehicle to avoid being shot.

One individual was in the living room located at the front of the house with his spouse and children watching television. He got up to look out of a window facing the street. The window did not have any covering. He was looking out the window, saw an SUV with its lights off, and heard the first shots when he immediately ducked down. There were between nine to twenty shots fired, and then the SUV accelerated quickly and drove away. A police car arrived almost immediately, and both individuals were able to describe the SUV to police who then pursued and ultimately arrested both Samaripas and the driver.

In his testimony at trial, Samaripas blamed the driver for the shooting and denied any involvement whatsoever. However, had the driver been the shooter, Samaripas would have been in some jeopardy by the spent casings as they came out of the chamber, and the casings would have been located inside the SUV instead of on the street. The casings would have discharged on the right side of the firearm. Samaripas

did admit that the driver knew who lived at the residence and that the driver and one of the residents had a dispute a week before the shooting in the instant case. Additionally, in his statement given on the night of his arrest, Samaripas spent a great deal of time venting about his views on illegal aliens, shootings relating to the illegal aliens, and his desires and intentions toward retaliation. In his statement the night of his arrest, Samaripas also made a comment that the officer should "[b]e prepared. To be honest with you, one of them is going to die before it is over with."

We find that it was a reasonable inference for a rational jury member to determine that Samaripas knowingly discharged a firearm at individuals based on the late hour of the shooting, the vehicles parked in and around the residence, and Samaripas's and the driver's testimony that they knew that a rival gang member resided at the residence that was shot at as well as Samaripas's statements the night of the arrest. We overrule issue two.

*Jury Charge Error*

Samaripas complains that the charge to the jury omitted an element of the offense of Engaging in Organized Criminal Activity. The element omitted was that Samaripas intended to establish, maintain, or participate as a member of a gang at the time of the offense. *See* TEX. PEN. CODE ANN. § 71.02 (Vernon Supp. 2009).

Samaripas did not object to the omission of this element in the trial court's charge to the jury. The State concedes that the omission of the language was erroneous. Based on the language of section 71.02, we agree that the charge was erroneous in omitting

that element of the offense, and that the instruction as given, was also erroneous. *See* TEX. PEN. CODE ANN. § 71.02 (Vernon Supp. 2009).

We must therefore analyze this error utilizing the standard of *Almanza v. State*. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (*citing Olivas v. State*, 202 S.W.3d 137, 143-44 (Tex. Crim. App. 2006), *citing Almanza*, 686 S.W.2d 157 (Tex. Crim. App. 1985)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza,* 686 S.W.2d at 171. In examining the record for egregious harm, we consider: 1) the entire jury charge, 2) the state of the evidence, including the contested issues and the weight of the probative evidence, 3) the final arguments of the parties, and 4) any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d at 144. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

*The Entire Jury Charge*

The jury charge contains the following instruction: "A person commits the offense of engaging in organized criminal activity if, as a member of a criminal street gang, he commits the offense of deadly conduct." The charge then correctly defines what constitutes a criminal street gang. A correct instruction on the definition of "knowingly" was included as required as the *mens rea* of the offense of deadly conduct. *See* TEX. PEN. CODE ANN. § 6.03 (Vernon 2003).

The charge then contains the following instruction:

"You are instructed that the State alleges that the defendant has committed criminal offenses or bad acts or extraneous offenses other than the offense for which he is now being tried. Such evidence is admitted for the purpose of evaluating the opinion testimony of the State's witness testifying to such evidence. The evidence may be considered for the purpose of aiding you in determining the weight, if any, to be given to the testimony of this witness. Evidence of any offense for which the defendant is not on trial may not be considered by you for the purpose of establishing the guilt of the defendant in this case.

You are instructed that any exhibits entered into evidence by the State through Officer Mike Kneese[1] are admitted for the limited purpose of determining the basis of the witness' (sic) opinion. The exhibits may not be considered by you for the purpose of establishing the guilt of the defendant or for any other purpose."

Then, the jury was charged as follows:

"Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt … that the defendant, David Samaripas, Jr., did then and there, acting alone or as a party as that term has been previously defined … and the defendant did then and there commit the said offense as a member of a criminal street gang, then you will find the defendant guilty of the offense of Engaging in Organized Criminal Activity as charged in the indictment."

The charge contained no instruction regarding the definition of "intent." We cannot say that the jury charge, taken as a whole, does anything to ameliorate the error.

*The State of the Evidence*

As stated above, we have found the evidence legally sufficient for the jury to have determined that Samaripas committed the offense with the intent to establish, maintain, or participate as a member of a gang at the time of the offense. Samaripas

---

[1] Officer Mike Kneese was the State's gang expert and testified as to his opinion regarding whether or not Samaripas and the driver of the SUV were members of a gang at the time of the offense. Photographs of Samaripas's tattoos were admitted through this officer in order to explain the significance of them as relates to gang membership.

and the driver of the SUV both contended that they were not gang members. At trial, Samaripas specifically denied gang membership at the time of the offense, which the State disputed. While the evidence that Samaripas committed the offense of deadly conduct was overwhelming, the evidence as to whether the offense was committed with the intent to establish, maintain, or participate as a member of a gang, although legally sufficient, was less strong.

*Final Arguments*

The State's argument did reference that if the jury found that Samaripas committed the offense as a member of a criminal street gang, that he was guilty of the offense of engaging in organized criminal activity. However, the State also characterized the events as Samaripas and his gang friend deciding to get revenge by shooting up a rival gang member's residence together, as gang members stick together.

*Relevant Information from the Entire Trial*

The State began its erroneous description of the requirements of engaging in organized criminal activity in voir dire, when a discussion of what constitutes the offense ensued. The State made the following statement: "Now, in the course of committing one of several offenses, if it is proved in court that while you committed that offense, an individual happens to be a member of a criminal street gang, that is what creates the crime of organized criminal activity." The State went on further to state that the offense can be committed two ways, by being a gang member or with the intent to establish, maintain, or participate in a combination or the profits of a combination.

When discussing the difference in levels between offenses, the State asked the venire panel if they agreed with the idea that if a person was a member of a gang that their punishment should go up a level, to which it appears that all of the panel but one agreed. That venireperson asked the State if a drive-by shooting occurred by a person who happened to be a gang member but that the shooting was not part of gang-related activity would constitute engaging in organized criminal activity, to which the State replied that all that they had to prove was that the offense of deadly conduct occurred and that the defendant was a member of a street gang.

Another venireperson asked the following: "A crime is committed. A guy comes along and takes the air out of my tire. So he is in a gang that does murder, drugs, whatever. Because he is a member of that gang, letting the air out of my tires makes it a criminal activity when the gang was not involved. He was. Say it's something personal. He didn't like me or didn't like my tire or whatever. But because of that and him being in a gang, he is prosecuted under this?" The State replied: "Yes, sir." The State corrected itself by stating that letting air out of tires is not one of the enumerated offenses in the statute but then tells the venireperson: "What you're going to have to do is go back to the statute and read: 'A person commits an offense if as a member of a criminal street gang he commits or conspires to admit (sic) one or more of the following.'"

However, in other portions of the trial, including its opening statement and during the testimony of the witnesses, the State referred to the offense as a gang-related

shooting, which could be construed as requiring more than Samaripas just being a gang member.

During its deliberations during the guilt-innocence phase of the trial, the jury sent out a note requesting "a list of the five elements that comprise the indictment (all pts)." It appears that the jury was requesting affirmation as to what the exact elements of the offense were. The record is unclear as to what the trial court's response to the question was, other than to send the charge back to the jury with its erroneous language.

Based on the record as a whole, we find that the repeated misstatements of the statute throughout the trial and in the charge as well as the omission of the element requiring the jury to find beyond a reasonable doubt that the offense of deadly conduct had to be committed with the intent to establish, maintain, or participate as a member of a gang deprived Samaripas of a valuable right, which was a jury finding on a contested element of the offense for which he was ultimately convicted. *See Sanchez v. State*, 209 S.W.3d at 125. We sustain issue three.

*Conclusion*

Using a hypothetically correct jury charge, we find that the evidence was legally sufficient to sustain Samaripas's conviction. We find that the trial court erred in misstating the elements of engaging in organized criminal activity and by omitting an essential element of that offense and that Samaripas was egregiously harmed by the misstatement and omission. Because of our decision in Samaripas's third issue, we do

not reach his fourth issue regarding the enhancements.  We reverse the conviction and remand for a new trial.

TOM GRAY<br>
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Reversed and remanded
Opinion delivered and filed February 3, 2010
Do not publish
[CRPM]