IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00044-CR

 

David Samaripas, Jr.,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 07-06200-CRF-272

 



MEMORANDUM  Opinion










 

            David Samaripas, Jr. appeals from his
conviction for the offense of Engaging in Organized Criminal Activity.  Tex. Pen. Code Ann. § 71.02 (Vernon Supp. 2009).  He elected to have the jury assess punishment.  After Samaripas pled
not true to two enhancements, the jury found the enhancements true, and based
on the jury’s verdict the trial court sentenced Samaripas to confinement for
fifty (50) years in the Texas Department of Criminal Justice – Institutional
Division.  Tex. Pen. Code Ann. §
12.42 (Vernon Supp. 2009).  Samaripas contends that the evidence was legally
insufficient to prove that he committed the offense of engaging in organized
criminal activity with the intent to establish, maintain, or participate as a
gang member, that the evidence was legally insufficient to prove that he
committed the offense of deadly conduct as alleged in the indictment, that he
suffered egregious harm from the trial court’s omission of one element of the
offense of engaging in organized criminal activity, and that his sentence was
unlawfully enhanced.  Because we find that Samaripas was egregiously harmed by
errors in the charge to the jury, we reverse and remand for a new trial.

Legal Insufficiency

            In his first issue, Samaripas
complains that the evidence was legally insufficient to establish that he
committed the offense of engaging in organized criminal activity in that there
was insufficient evidence to prove that he shot at the residence in question
with the intent to establish, maintain, or participate as a member of a gang. 
In his second issue, he complains that the evidence was legally insufficient to
establish that he committed the offense of deadly conduct as alleged by the
State in the indictment.

Standard of review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  A jury is entitled to accept one
version of the facts and reject another, or reject any part of a witness's
testimony.  Margraves, 34 S.W.3d at 919.  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied,
529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000).  Instead, we
“determine whether the necessary inferences are reasonable based upon the
combined and cumulative force of all the evidence when viewed in the light most
favorable to the verdict.”  Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  It is not necessary that each fact point directly and independently
to the guilt of the appellant, as long as the cumulative force of all the
incriminating circumstances is sufficient to support the conviction.  Hooper,
214 S.W.3d at 13.  We must presume that the fact-finder resolved any
conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton,
235 S.W.3d at 778.

            The sufficiency of
the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case.  Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would be one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  The law as authorized by the indictment means the statutory
elements of the charged offense as modified by the charging instrument.  See
Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The Facts Relating to Engaging in Organized
Criminal Activity

            We will address the relevant facts as
necessary to our legal sufficiency review for each issue separately.  Our
recitation of the facts is given from a view most favorable to the judgment.  See
Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  Samaripas was
shot at a club in a known gang neighborhood approximately one month before the
offense in the instant case.  The injuries sustained in that shooting resulted
in Samaripas having a colostomy, which required the use of a bag.  A member of
the Surenos gang was eventually arrested for that shooting.  The Surenos gang
and the Latin Kings were known to be enemies.  Samaripas was an admitted member
of the Latin Kings at one time; however, Samaripas denied membership at the
time of the incident.  

In the early morning hours of October 5, 2007, a
drive-by shooting occurred whereby approximately eleven shots were fired in the
general direction of a residence.  The shots were heard by a patrol officer,
who immediately drove to the scene.  A visitor to the residence and a resident
of the home gave the police a description of the vehicle from which the shots
had originated.  The police shortly thereafter located a vehicle matching the
description given by the witnesses, began pursuit, and at some point during the
chase, the officer observed something being tossed out of the passenger-side
window of the vehicle.  When the vehicle was ultimately stopped, Samaripas was
determined to be in the front passenger seat.  Another alleged member of the
Latin Kings was the driver of the vehicle.

The residence that was fired upon was the
residence of the individual that would later be arrested for shooting
Samaripas.  Casings from the firearm were located on the ground at the
residence.  After a search of the area where the item had been thrown during
the high-speed chase, a bag used for colostomies was located that contained a
semiautomatic 9 millimeter firearm, an empty clip and two loaded clips, and a
cell phone.  The casings located at the scene were later matched to the firearm
located in the bag by ballistics expert testimony.

According to the State’s gang expert, there are
five indicators of gang membership.  If two indicators are present, law
enforcement considers that an individual is a gang member.  Four of the five indicators
were present relating to Samaripas.  They were:  admitted gang membership,
information supplied by an informant, his tattoos, and being with a gang member
during the commission of a criminal offense, which is consistent with gang
activity.  Three of the five indicators of gang membership were present with
the driver of the vehicle.

The Latin Kings are a national gang, and were
active at the time of the offense in Bryan, where the shooting took place. 
Their primary activities are narcotics trafficking and retaliatory,
assaultive-type offenses, which includes deadly conduct.  Samaripas had several
tattoos on his person which were associated with the Latin Kings.  Although
Samaripas denied gang affiliation at the time of the drive-by shooting, according
to the officer who interviewed him, he referred to the Latin Kings as “us” in
his oral statement to the police after his arrest.  Samaripas demonstrated
significant knowledge of the Latin Kings, knew that the Surenos gang consisted
mostly of illegal aliens from Mexico, was overtly hostile regarding illegal
aliens, and knew that there was significant hatred between the Surenos and the
Latin Kings.  

We find that the evidence before the jury is
sufficient to sustain the jury’s necessary inferences that Samaripas was acting
with the intent to establish, maintain, or participate as a member of a gang,
and that those inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the verdict. 
We overrule issue one.

Samaripas also complains that the evidence was
legally insufficient for the jury to have found that he committed the offense
of Deadly Conduct.  See Tex. Pen.
Code Ann. § 22.05 (Vernon Supp. 2009).  There are two methods by which
felony deadly conduct may be alleged.  The first is by knowingly discharging a
firearm “at or in the direction of one or more individuals.”  Tex. Pen. Code Ann. § 22.05(b)(1),
(e).  The second is by knowingly discharging a firearm “at or in the direction
of a habitation, building, or vehicle and is reckless as to whether the
habitation, building, or vehicle is occupied.”  Tex. Pen. Code Ann. § 22.05(b)(2).  The indictment alleges
deadly conduct by knowingly discharging a firearm at individuals, and then lists
ten specific names of persons.  Samaripas contends that the evidence was
legally insufficient to show that Samaripas was aware or reasonably certain
that individuals were in the home at the time of the shooting.

The Facts Relating to Deadly Conduct

The shooting took place at approximately 1:30
a.m.  Four vehicles were parked outside of the residence at the time of the
shooting.  Samaripas does not dispute that shots were fired in the direction of
the residence.  There were approximately ten adults and four children in and
outside of the residence.  There was a person outside who had just left the
residence who was a known member of another rival gang of the Latin Kings,
although it was not clear whether or not she was visible from the shooter’s
vehicle.  She testified that she saw an SUV approach with its lights off, heard
the initial shots, and ducked down behind a vehicle to avoid being shot.  

One individual was in the living room located at
the front of the house with his spouse and children watching television.  He
got up to look out of a window facing the street.  The window did not have any
covering.  He was looking out the window, saw an SUV with its lights off, and
heard the first shots when he immediately ducked down.  There were between nine
to twenty shots fired, and then the SUV accelerated quickly and drove away.  A
police car arrived almost immediately, and both individuals were able to
describe the SUV to police who then pursued and ultimately arrested both
Samaripas and the driver.

In his testimony at trial, Samaripas blamed the
driver for the shooting and denied any involvement whatsoever.  However, had
the driver been the shooter, Samaripas would have been in some jeopardy by the
spent casings as they came out of the chamber, and the casings would have been
located inside the SUV instead of on the street.  The casings would have
discharged on the right side of the firearm.  Samaripas did admit that the
driver knew who lived at the residence and that the driver and one of the
residents had a dispute a week before the shooting in the instant case. 
Additionally, in his statement given on the night of his arrest, Samaripas
spent a great deal of time venting about his views on illegal aliens, shootings
relating to the illegal aliens, and his desires and intentions toward
retaliation.   In his statement the night of his arrest, Samaripas also made a
comment that the officer should “[b]e prepared.  To be honest with you, one of
them is going to die before it is over with.”  

We find that it was a reasonable inference for a
rational jury member to determine that Samaripas knowingly discharged a firearm
at individuals based on the late hour of the shooting, the vehicles parked in
and around the residence, and Samaripas’s and the driver’s testimony that they
knew that a rival gang member resided at the residence that was shot at as well
as Samaripas’s statements the night of the arrest.  We overrule issue two.

Jury Charge Error   

Samaripas complains that the charge to the jury
omitted an element of the offense of Engaging in Organized Criminal Activity. 
The element omitted was that Samaripas intended to establish, maintain, or
participate as a member of a gang at the time of the offense.  See Tex. Pen. Code Ann. § 71.02 (Vernon Supp. 2009).

Samaripas did not object to the omission of this
element in the trial court’s charge to the jury.  The State concedes that the
omission of the language was erroneous.  Based on the language of section
71.02, we agree that the charge was erroneous in omitting that element of the
offense, and that the instruction as given, was also erroneous.  See Tex. Pen. Code Ann. § 71.02 (Vernon Supp. 2009).

We must therefore analyze this error utilizing the
standard of Almanza v. State.  Allen v. State, 253
S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing Olivas v. State, 202
S.W.3d 137, 143-44 (Tex. Crim. App. 2006), citing Almanza, 686 S.W.2d
157 (Tex. Crim. App. 1985)).  Under Almanza, unobjected-to
jury charge error will not result in reversal of a conviction in the absence of
“egregious harm.”  Almanza, 686 S.W.2d at 171.  In
examining the record for egregious harm, we consider: 1) the entire jury
charge, 2) the state of the evidence, including the contested issues and the
weight of the probative evidence, 3) the final arguments of the parties, and 4)
any other relevant information revealed by the record of the trial as a whole.   Olivas v. State, 202 S.W.3d at 144.  Jury charge error
is egregiously harmful if it affects the very basis of the case, deprives the
defendant of a valuable right, or vitally affects a defensive theory.  Stuhler
v. State, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); Sanchez v. State,
209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The Entire Jury Charge

            The jury charge contains the following
instruction:  “A person commits the offense of engaging in organized criminal
activity if, as a member of a criminal street gang, he commits the offense of
deadly conduct.”  The charge then correctly defines what constitutes a criminal
street gang.  A correct instruction on the definition of “knowingly” was
included as required as the mens rea of the offense of deadly conduct.  See
Tex. Pen. Code Ann. § 6.03
(Vernon 2003).

            The charge then contains the following
instruction:  

“You are instructed that the State alleges that
the defendant has committed criminal offenses or bad acts or extraneous
offenses other than the offense for which he is now being tried.  Such evidence
is admitted for the purpose of evaluating the opinion testimony of the State’s
witness testifying to such evidence.  The evidence may be considered for the
purpose of aiding you in determining the weight, if any, to be given to the
testimony of this witness.  Evidence of any offense for which the defendant is
not on trial may not be considered by you for the purpose of establishing the
guilt of the defendant in this case.

 

You are instructed that any exhibits entered into
evidence by the State through Officer Mike Kneese[1] are admitted for the limited purpose of
determining the basis of the witness’ (sic) opinion.  The exhibits may not be
considered by you for the purpose of establishing the guilt of the defendant or
for any other purpose.”

 

            Then, the jury was charged as follows:

“Now, bearing in mind the foregoing instructions,
if you find from the evidence beyond a reasonable doubt … that the defendant,
David Samaripas, Jr., did then and there, acting alone or as a party as that
term has been previously defined … and the defendant did then and there commit
the said offense as a member of a criminal street gang, then you will find the
defendant guilty of the offense of Engaging in Organized Criminal Activity as
charged in the indictment.”

 

            The charge contained no instruction regarding the definition of
“intent.”  We cannot say that the jury charge, taken as a whole, does anything
to ameliorate the error.

The State of the Evidence

            As stated above, we have found the evidence legally sufficient for
the jury to have determined that Samaripas committed the offense with the
intent to establish, maintain, or participate as a member of a gang at the time
of the offense.  Samaripas and the driver of the SUV both contended that they
were not gang members.  At trial, Samaripas specifically denied gang membership
at the time of the offense, which the State disputed.  While the evidence that
Samaripas committed the offense of deadly conduct was overwhelming, the
evidence as to whether the offense was committed with the intent to establish,
maintain, or participate as a member of a gang, although legally sufficient,
was less strong.   

Final Arguments

            The State’s argument did reference that if the jury found that
Samaripas committed the offense as a member of a criminal street gang, that he
was guilty of the offense of engaging in organized criminal activity.  However,
the State also characterized the events as Samaripas and his gang friend
deciding to get revenge by shooting up a rival gang member’s residence
together, as gang members stick together.

Relevant Information from the Entire Trial

            The State began its erroneous description
of the requirements of engaging in organized criminal activity in voir dire,
when a discussion of what constitutes the offense ensued.  The State made the
following statement:  “Now, in the course of committing one of several
offenses, if it is proved in court that while you committed that offense, an
individual happens to be a member of a criminal street gang, that is what
creates the crime of organized criminal activity.”  The State went on further
to state that the offense can be committed two ways, by being a gang member or
with the intent to establish, maintain, or participate in a combination or the
profits of a combination. 

            When discussing the difference in
levels between offenses, the State asked the venire panel if they agreed with
the idea that if a person was a member of a gang that their punishment should
go up a level, to which it appears that all of the panel but one agreed.  That
venireperson asked the State if a drive-by shooting occurred by a person who
happened to be a gang member but that the shooting was not part of gang-related
activity would constitute engaging in organized criminal activity, to which the
State replied that all that they had to prove was that the offense of deadly
conduct occurred and that the defendant was a member of a street gang.

            Another venireperson asked the
following:  “A crime is committed.  A guy comes along and takes the air out of
my tire.  So he is in a gang that does murder, drugs, whatever.  Because he is
a member of that gang, letting the air out of my tires makes it a criminal
activity when the gang was not involved.  He was.  Say it’s something
personal.  He didn’t like me or didn’t like my tire or whatever.  But because
of that and him being in a gang, he is prosecuted under this?”  The State
replied:  “Yes, sir.”  The State corrected itself by stating that letting air
out of tires is not one of the enumerated offenses in the statute but then
tells the venireperson:  “What you’re going to have to do is go back to the
statute and read:  ‘A person commits an offense if as a member of a criminal
street gang he commits or conspires to admit (sic) one or more of the
following.’”  

            However, in other portions of the
trial, including its opening statement and during the testimony of the
witnesses, the State referred to the offense as a gang-related shooting, which
could be construed as requiring more than Samaripas just being a gang member. 

            During its deliberations during the
guilt-innocence phase of the trial, the jury sent out a note requesting “a list
of the five elements that comprise the indictment (all pts).”  It appears that
the jury was requesting affirmation as to what the exact elements of the
offense were.  The record is unclear as to what the trial court’s response to
the question was, other than to send the charge back to the jury with its
erroneous language.

            Based on the record as a whole, we
find that the repeated misstatements of the statute throughout the trial and in
the charge as well as the omission of the element requiring the jury to find
beyond a reasonable doubt that the offense of deadly conduct had to be
committed with the intent to establish, maintain, or participate as a member of
a gang deprived Samaripas of a valuable right, which was a jury finding on a
contested element of the offense for which he was ultimately convicted.  See
Sanchez v. State, 209 S.W.3d at 125.  We sustain issue three.

Conclusion

            Using a hypothetically correct jury charge, we find that the evidence
was legally sufficient to sustain Samaripas’s conviction.  We find that the
trial court erred in misstating the elements of engaging in organized criminal
activity and by omitting an essential element of that offense and that
Samaripas was egregiously harmed by the misstatement and omission.  Because of
our decision in Samaripas’s third issue, we do not reach his fourth issue
regarding the enhancements.  We reverse the conviction and remand for a new
trial.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Reversed and remanded

Opinion delivered and
filed February 3, 2010

Do not publish

[CRPM]









[1]
Officer Mike Kneese was the State’s gang expert and testified as to his opinion
regarding whether or not Samaripas and the driver of the SUV were members of a
gang at the time of the offense.  Photographs of Samaripas’s tattoos were
admitted through this officer in order to explain the significance of them as
relates to gang membership.