CAUSE: PD-0808-15
ORIGINAL

ANDRE D. BERRY                              X          PETITION FOR DISCRETIONARY REVIEW

V.                                          X          TO COURT OF CRIMINAL APPEALS

FILED IN
STATE OF TEXACOURT OF CRIMINAL APPEALS X      OF THE STATE OF RECEIVED IN
                                                      COURT OF CRIMINAL APPEALS
SEP 17 2015                            X

                                       X      SEP 15 2015

Abel Acosta, Clerk
                                              Abel Acosta, Clerk

## PETITION FOR DISCRESSIONARY REVIEW

### I

### STATEMENT OF FACTS NECESSARY TO AN UNDERSTANDING OF THE ISSUES PRESENDED.

ANDRE D. BERRY IS PETITIONING THIS COURT FOR A DISCRESSIONARY REVIEW BECAUSE NOT ONLY DID THE TRIAL COURT, WHOM IMPOSED AN ILLEGAL SENTENCE ON HIM, FELONY PUNISHMENT FOR A MISDEMEANOR CONVICTION, AND THUS THE TRIAL COURT ERRORED IN FAILING TO INCLUDE CERTAIN ELEMENTS OF THE OFFENSE IN THE APPLICATION PARAGRAPS OF THE JURY CHARGE AND IN FAILING TO RESTRICT THE DEFINITIONS OF THE APPLICABLE CULPABLE MENTAL STATES TO THE RESULT OF CONDUCT COMPONENTS, AND APPELLENT SUFFERED EGREGIOUS HARM AS A RESULT OF THE TRIAL COURT ERRONEOUS JURY CHARGE INSTRUCTION AS WELL AS OMISSIONS IN THE CHARGE TO CONSTRUCT A FELONY CHARGE. AND THE COURT OF APPEAL'S OPINION CONFLICTS WITH DECISIONS OF WACO COURT OF APPEALS GOVERNING SERIOUS STRUCTURAL ERRORS IN JURY INSTRUCTION, SAME IN LUGO V. STATE (10.09.00170 CR). COURT OF APPEAL ERRORED IN

NOT CITING TO CAUSE ON APPELLANT BRIEF.

## II

## STATEMENT OF ISSUES

COURT OF APPEALS ERRORED IN NOT ALLOWING APELLANT ALSO STRUCTURAL ERROR CHALLENGE. IT IS SETTLED THAT APPELLANT COULD NOT ENGAGE IN A HARMLESS ERROR ANALYSIS WITHOUT FIRST DECIDING WHETHER THE CHALLENGE ERROR WAS STRUCTURAL. SULLAVEN VS. LOUISIANA (508. US. AT 281. ERRONOUS REASONABLE DOUBT INSTRUCTIONS CONSTITUTE STRUCTURAL ERROR.) A STRUCTURAL ERROROCCURS WHEN THE TRAIL ITSELF IS SERIOUSLY IMPAIRED. THAT IS IMPOSSIBLE TO DETERMINE WHAT THE JURY CONSIDERED (508 US. AT 201) UNITED STATES V. NEDER (527. US. AT 17). ALSO IN SULLIVAN, THE COURT HELD THAT A CONSISTENTLY DEFICIENT REASONABLE DOUBT INSTRUCTION CAN NEVER BE HARMLESS ERROR BECAUSE BY INSTRUCTING THE JURY ERRONOUSLY ON ITS BURDEN OF PROOF, THE COURT DEPRIVED THE DEFENDANT OF HIS FIFTH AND SIXTH AMMENDMENT RIGHTS TO HAVE JURY REACH A CONCLUSION THAT WAS NEVER IN FACT RENDERED. ALSO THE COURT OF APPEALS ERRORED IN ITS OPINION WHEN IT INSTRUCTED ITSELF THAT THE OMISSIONS WERE ERROR THEN SAY THEY WERE HARMLESS. IN HARMON, THE COURT INSTRUCTED FAILURE TO INSTRUCT ON "ANY" ELEMENT COURTS REQUIRED "AUTOMATIC" REVERSAL AND OPINIONED THAT THERE CAN BE NO FAIRNESS IN A SYSTEM THAT ALLOWS A JURY TO CONVICT A DEFENDANT OF A CRIME

2

FOR WHICH IT UTTERLY HAS NO DEFINITION. FIRST,
I MUST ADDRESS ONE IMPORTANT FACT, THE COURT OF
APPEALS AS WELL AS TRIAL JUDGE MUST KEEP IN MIND
THIS CASE AS A WHOLE WAS A VIOLATION OF A
PROTECTIVE ORDER AND THAT THE JURY, ALONG WITH THE
APPELLANT, ARE ONLY LAYPERSONS. IT IS THE TRIAL JUDGE'S
JOB TO PROTECT THE VALIDITY OF JUSTICE AND HOW IT
IS DISPENSED. HERE, IT WAS ERRONEOUS FOR COURT OF
APPEALS, AS WELL AS THE TRIAL COURT, TO ALLOW THE VERY
BASIES OF THIS CASE IN THE FIRST PLACE WHEN IT WAS
POINTED OUT TO THE TRIAL JUDGE THAT NOT ONLY WAS THE
CASE AN ALLEGED MISDEMEANOR, AND NOT A DIRECT VERDICT,
BUT IT WAS ERRONEOUS AND INVALID ON IT'S FACE BY PROVING
IN OPEN COURT THAT IT DID NOT ALLEDGE A NOTICE OF
HEARING NOR DID IT PROVIDE PROOF THAT THE APPELLANT WAS
SERVED OR THAT THERE WAS EVEN A SIGNATURE ON THE ORDER
IN THE FIRST PLACE, CLEARLY ON ITS FACE AND THAT ALLEGED
VICTIM OF THE EXPARTE ITSELF STATES ALLEGED WITTNESS,
WHO WAS IN FACT A DA, WHICH TURNED THE VICTIM AROUND
AND DENIED THE PROTECTIVE ORDER IN THE FIRST PLACE. AS
CONTESTED IN THE TRIAL AND EVEN IN ITS JURY CHARGE
THERE SHOULDN'T HAVE BEEN A TRIAL AT ALL WITH HEARSAY
TESTIMONY THROUGH OUT THE TRIAL BY OFFICERS AND BY THE
STATE'S WITTNESS WHO ADMITTED, CLEARLY, THAT HE USED DRUGS,
EVEN DURING THE TRIAL. THIS WAS ERROR. BUT THE APPELLANTS
RIGHTS WERE VIOLATED THROUGHOUT THE TRIAL AND EVEN
OBJECTED DURING TRIAL TO THE COURT OF APPEALS DURING

3

KRAHMANN STATED THAT HE HIT ME TOO IN HIS "IF YOU TAKE ME TO THE HOSPITAL TO GET DRUGS I'LL SAY" TESTIMONY. THE COURT OF APPEALS IS ENVISIONING A SCENARIO WHERE ONE COULD BE STRIKING A PERSON WITHOUT AN ASSULT. NEVERTHELESS THE VICTIM STATED SHE WAS SICK AND FELL SIX TO EIGHT FEET DIRECTLY IN FRONT OF THE APPELLANT CREATING REASONABLE DOUBT. KRAHMANN STATED HE DROVE APPELLANT TO A HOUSE THAT WAS AN ADDRESS THAT WASN'T IN THE PROTECTIVE ORDER AND THAT THEY WERE THERE FOUR HOURS BEFORE THE ALLEGED VIOLATION OCCURED, THATS ALSO CONSTRUCTS REASONABLE DOUBT.

## II

## STATEMENT of WHY IMMEDIATE DISCRESSIONARY REVIEW IS NECESSARY

THIS CASE INVOLVES ISSUES OF EXCEPTIONAL IMPORTANCE BECAUSE THE DECISION CONFLICTS WITH IN THE WACO COURT OF APPEAL LUGO v. STATE (SW. 2d, 2010 WL 712248). THAT COURT OF APPEALS REFUSED TO ADDRESS AND ITS OPINION THE APPELLANTS CITED TO BRIEFS WHICH CONFLICTS WITH THE LAW AND LEGISLATION. BUT THIS CASE IS MORE EXTRAORDINARY IN ITS FINDING. HERE, WE HAVE A CASE THAT IS CLEARLY UNCONSTITUTIONAL AT ITS BEST. NOT ONLY IS AN APPELLANT BEING CONVICTED OF A CRIME OUTSIDE ITS PUNISHMENT PHASE, BUT AN OMISSION THAT WAS NOT EVEN IN HIS INDICTMENT, THEREFORE THE COURT OF APPEALS ERRORED IN OVERLOOKING THE BRIEF CHARGED ANALYSIS AS A WHOLE.

THEREFORE THE APPELLANT/ LAYPERSON THINKS THIS COURT SHOULD

AND GRANT THE APPELLANT A DISCRESSIONARY REVIEW FOR FACTS AND MORE CARVED OUT IN HIS BRIEF HIS TRIAL AS A WHOLE AND FOR PROPER JUSTICE TO APPELLANT FOR NOT JUST HIS ILLEGAL SENTENCE BUT ALSO HIS ERRONEOUS TRIAL AS WELL AS THE FUNDEMENTAL HARMFUL JURY INSTRUCTIONS AND HIS INVALID PROTECTIVE ORDER THAT WAS DEAD ON ITS FACE THAT SURROUNDED ERRONEOUS ACTIONS OF THE TRIAL COURT AND WERE OBJECTED TO AT TRIAL. APPELLANT/LAY PERSON CAN ONLY PRAY FOR JUSTICE AND TO UTTERLY QUOTE THE WISE WORDS OF THE HON. JUDGE TRUMAN ROBERTS WHO AUTHORED AN OPINION FOR THIS COURT STATING THAT " THE FAILURE OF THE CHARGE TO APPLY THE LAW TO FACTS IMPAIRS THE RIGHTS TO TRIAL BY JURY AND THEREFORE, BY DEFINITION, IS CALCULATED TO INJURE THE RIGHTS OF THE DEFENDANT TO TRIAL BY JURY" WHICH RIGHT IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE TEXAS CONSTITUTION. THIS COURT HAS CONSTANTLY UPHELD THE LAW IN CASES SUCH AS THIS WHERE THE COURT HAS MISLED THE JURY AS TO THE LAW, OR HAS COMMITTED ANY OTHER MATERIAL LAW CALCULATED TO INJURE THE RIGHTS OF THE DEFENDANT WILL BE REMANDED OR OVER TURNED.

PRAYER

IT IS OBVIOUS THAT THE APPELLANT/LAY PERSON'S RIGHTS TO A PROPER TRIAL, A CORRECT JURY CHARGE TO THE COURT, AS WELL AS THE JURY. HE HAS BEEN DENIED A FAIR TRIAL BUT THROUGHOUT THIS WHOLE PROCESS THE APPELLANT'S FOURTH AMMENDMENT RIGHTS WITH OFFICER YOBEL ON THE ALLEGED INVESTIGATION OF THE UNCONSTITUTIONAL VIOLATION OF HIS PERSONAL PHONE AND PROPERTY AS WELL AS HEARSAY TESTIMONIES THROUGHOUT THE UNCONSTITIONAL TRIAL AND DEPRIVED PROPER REPRESENTATION OF COUNSEL, VIOLATED ATTORNEY-CLIENT PRIVILAGE DURING THIS APPEAL PROCESS STANDS IN ALIGNMENT WITH SO MANY BEFORE HIM CITING ROSS V. MOFFITT, DOUGLAUS, GRIFFIN, BEARDAN, AND NOT EVEN BY ACCESS TO A PROPER TRANSCRIPT TO DEFEND HIMSELF TO THIS COURT, IT IS CLEAR HE AS BEEN DEPRIVED, VIOLATED, AND DENIED A PROPER TRIAL BY TRIAL COURT AND HIS FUNDIMENTAL CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED. THEREFORE, THE COURT OF APPEALS ERRORED IN NOT ADDRESSING THE OPINION OF THE WACO COURT OF APPEALS CITING AN OPINION IN APPELLANTS BRIEF OF LUGO V. STATE, 2010 WHICH WAS REMANDED ON SUA PONTE ITS OWN DECISION ON DISCRESSIONARY REVIEW OF SAME ISSUES AS APPELLANTS CAUSE, THUS THE APPELLANT PRAYS THIS COURT GRANTS HIM THIS PETITION OF DISCRESSIONARY REVIEW.

RESPECTFULLY SUBMITTED

PRO SE APPELLANT ANDRE BERRY

SIGN:

DATE: 9/3/15

## CERTIFICATE OF SERVICE

I CERTIFY THAT THE FOREGOING PETITION FOR DISCRESSIONARY REVIEW HAS BEEN SERVED ON THE COURT CLERK OF THE STATE OF TEXAS CRIMINAL COURT OF APPEALS IN THE FOLLOWING MANNER:

☐ PERSONAL DELIVERY

☐ BY FAX: XXX. XXX. XXXX.

☒ BY UNITED STATES MAIL TO: P. O. BOX 12308, CAPITAL STATION, AUSTIN, TEXAS 78711.

DATE: 9/3/15

APPELLANT'S ATTORNEYS

LEAD: CHRISTOPHER ROUTT
1207 UNIVERSITY DR., STE 101
MCKINNY, TX 75069
214. 544. 7406
214. 417. 3434

PRO SE APPELLANT

ANDRE BERRY #228825

SIGN:

4200 community Avenue
MCKINNY, TX 75071

THE STATE OF TEXAS
COUNTY OF COLLIN

Before me, the undersigned authority, on this day personally appeared, _Andre D Berry_ who being by me duly sworn, upon oath states that the allegations of fact contained in the foregoing motion are true and correct.

Subscribed and sworn to before me this _4th_ day of _September_, 20_15_ to certify which witness my hand and seal of Office.



NOTARY PUBLIC IN AND FOR
COLLIN COUNTY, TEXAS

MARY E. LEWIS
Notary Public
STATE OF TEXAS
My Comm. Exp. March 25, 2017

Affirmed and Opinion Filed June 10, 2015



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-01186-CR

ANDRE D. BERRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court
Collin County, Texas
Trial Court Cause No. 380-82821-2012

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Bridges

Andre D. Berry appeals his violation of a protective order conviction. A jury convicted appellant, and the trial court sentenced him to four years' confinement. In four issues, appellant argues the sentence imposed by the trial court is illegal because it imposes felony punishment for a misdemeanor conviction, the trial court erred in failing to include certain elements of the offense in the application paragraph of the jury charge and in failing to restrict the definitions of the applicable culpable mental states to the result of conduct components, and appellant suffered egregious harm as a result of the trial court's erroneous jury charge instructions. We affirm the trial court's judgment.

Camilla Thornton married appellant for the first time in 1998. The couple divorced, remarried, and divorced again in 2008. On June 5, 2012, the 417th District Court of Collin

County signed a protective order against appellant. On May 24, 2012, appellant was served with a copy of the "Ex Parte Temporary Protective Order and Notice of Application for Protective Order." On July 6, 2012, appellant filed a pro se "motion of appeal" in the trial court seeking to have the trial court's order set aside; however, the order was not set aside.

On September 18, 2012, Thornton went to a house in Plano to see a friend who had been in a car accident. Thornton remembered that police were called to the house, and she was injured. Thornton gave two statements saying appellant hit her.

Plano police officer Raymond Yokel was dispatched to the house where Thornton was injured. A call had come in about a male with a gun arguing with a female in front of the house. When Yokel arrived at the house, another officer was already there, and they both approached the house on foot. Yokel observed appellant yelling at a woman "in the yard across from him as he was leaving the area headed towards a white pickup truck." Appellant got in the passenger side of the pickup and close the door. Yokel was watching appellant's hands to see if he had a weapon because the call stated there was a man with a gun. Another man was in the driver's seat of the pickup, and the engine was running. Other officers arrived and surrounded the pickup, and Yokel opened appellant's door and removed him from the pickup. Yokel searched appellant but did not find a weapon. Yokel placed appellant in the back of his patrol car after another officer handcuffed him.

Yokel approached the woman, Thornton, who said her face was hurting badly. Thornton "wasn't really able to talk much." Thornton "had a swelling appearing on her mouth and blood all over her lips and she stated that she was in pain." Yokel returned to his car, and appellant initiated a conversation in which appellant stated he had received a phone call from Thornton and that was why he was there. Appellant stated he could verify that Thornton called him, and Yokel went to retrieve appellant's cell phone from the pickup. Appellant said the number for

"Junior" must have been the number Thornton called from. Yokel called the number for "Junior," who said appellant was a friend of his and he knew who Thornton was, but he had not spoken with either one of them all day. One of the other officers had run a criminal history on appellant, and it revealed there was a protective order against appellant. Yokel transported appellant to the police station and booked him into jail.

Appellant was indicted on a charge of violation of a protective order. At trial, the State introduced the testimony of William Kralemann, a friend of appellant's. On September 18, 2012, Kralemann and appellant "were just going to hang out at one of [appellant's] friend's house." Kralemann drove appellant to the house where he was arrested, and they saw appellant's "ex old lady," Thornton, sitting in her car parked in front of the house. Kralemann parked on the other side of the street, and appellant got out to talk to Thornton. Kralemann stayed in the pickup. Thornton was sitting on the passenger side of her car, and "her leg was hanging out." Appellant approached her and spoke with her, but things "escalated." Appellant slapped Thornton in the face and "slammed the door on her leg." Kralemann got out and "tried to break it up," succeeding in getting appellant to come back and get in Kralemann's truck. Police arrived and took appellant and Kralemann out of the truck. Kralemann was also arrested and charged with drug possession.

On cross-examination, Kralemann admitted he had six different pills and a prescription bottle when he was arrested, but he only had a prescription for one of them: Klonopin. When asked if he was a drug addict, Kralemann responded, "Maybe. I used to be." On the night he was arrested, Kralemann testified he might have taken "a couple of Flexerils" and "maybe a couple" Klonopin.

Thornton testified that, following this incident, she had married appellant again in February 2013. Thornton did not remember if she told the police what happened or if she wrote

-3-

a statement because she "passed out." Thornton knew she was taken to the hospital but did not "remember anything from that night because [she] passed out." Thornton could not remember making a statement to police, but the State introduced two written statements in which Thornton said appellant had beaten her. Appellant also called Thornton as a witness and, when asked if appellant hit her on September 18, 2013, she replied, "No, not that I believe."

The trial court admitted into evidence photographs of Thornton depicting her facial injuries. The Plano Fire Department's records that were admitted into evidence included under description,

COMPLAINT[:] "HE HIT ME IN MY FACE AND HEAD"

SYMPTOMS[:] JAW SORE

* * *

PATIENT STATED SHE HAD BEEN HIT WITH A FIST IN THE FACE, JAW, AND TOP OF HER HEAD. PATIENT HAD TO BE COMMUNICATED WITH VIA WRITING ON A PAPER DUE TO HER JAW PAIN.

Thornton's medical records from her treatment immediately following the incident and transport to Medical Center of Plano that were admitted into evidence contained the following history of present illness:

Chief Complaint- REPORTED PHYSICAL ASSAULT. Location of injuries- head, face and neck. This occurred just prior to arrival.

Reported assailant (ex-husband). The patient sustained multiple blows with a fist. This is a reported assault. Occurred at home.

The patient complains of moderate pain. The patient sustained a blow to the head and had loss of consciousness.

Some of the clinical impressions stated in the hospital's medical records were:

Minor closed head injury with loss of consciousness.
Acute cervical strain.
Multiple contusions to the head and face.
Physical assault.

The jury charge in this case contained, among others, the following definitions:

A person commits an offense if, in violation of a protective order, he intentionally or knowingly commits family violence.

A person also commits an offense if, in violation of a protective order, he intentionally or knowingly communicates directly with a protected individual or a member of the family or household in a threatening or harassing manner; or goes near the protected individual in a manner specifically prohibited in the order; or goes near any of the places specifically prohibited in the order.

A person also commits an offense if he intentionally or knowingly causes bodily injury to another.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

"Family violence" means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

The application paragraph of the charge instructed the jury as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day of September, 2012, in Collin County, Texas, the defendant, ANDRE D. BERRY, did then and there intentionally or knowingly violate the terms of a protective order issued by Judge Cynthia Wheless of the 417th District Court of Collin County, Texas, on June 5, 2012, by intentionally or knowingly committing family violence against Camilla Thornton by striking Camilla Thornton in the face or head with defendant's hand, then you will find the defendant guilty of violation of a protective order by assault as charged in the indictment.

The jury found appellant guilty, and this appeal followed.

In his first issue, appellant argues the sentence imposed by the court is illegal because it imposes felony punishment for a misdemeanor conviction. Specifically, appellant argues the jury charge fails to allege that the protective order in this case was violated by committing an assault. "At best the indictment forces an assumption upon the district court to invoke its jurisdiction: that either all instances of family violence constitute an assault or that all instances of striking an individual in the face or head constitute an assault." In his second issue, appellant argues the application paragraph of the court's charge also failed to include language requiring

the jury to find beyond a reasonable doubt that appellant was given notice of the hearing on whether to issue the protective order; the State concedes this omission was error but argues the error was harmless. In his third issue, appellant argues the trial court erred in not restricting the culpable mental states in this case to "their proper result-of-conduct components." In his fourth issue, appellant argues he suffered egregious harm as a result of the trial court's erroneous jury charge instructions.

We must first determine whether the charges as submitted to the jury were erroneous and if so, we must then analyze these complaints utilizing the standards set forth in *Almanza v. State*. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006), citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)). Under *Almanza*, unobjected-to jury charge error will not result in reversal of a conviction in the absence of "egregious harm." *Almanza*, 686 S.W.2d at 171. It is undisputed that appellant did not object to the jury charge.

In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas*, 202 S.W.3d at 144. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The charge included a definition of the culpable mental states in both nature-of-conduct and result-of-conduct components. Appellant argues assault is a result-of-conduct offense, and the inclusion of nature-of-conduct language was error. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). However, appellant was not charged with simple assault. Instead, the commission of an assault was alleged as the means by which appellant knowingly and

intentionally violated a protective order. Thus, the State was required to prove that appellant understood the nature of his conduct: that the conduct violated a protective order.

Although the court's charge does define "assault," the definition does not appear in the application paragraph concerning violation of a protective order by assault. The application paragraph on violation of a protective order by assault does not require the jury to find appellant committed "assault" before finding him "guilty of violation of a protective order by assault as charged in the indictment." The charge does not allege appellant had notice of the hearing on whether or not to issue the protective order. The court's charge was thus erroneous in these respects. Additionally, appellant complains assault is a result-of-conduct offense, and the inclusion of nature-of-conduct language was error. However, neither the State nor appellant cites any authority establishing the applicable culpable mental state in a violation of a protective order by assault case. Assuming without deciding the inclusion of nature-of-conduct language was also error, we turn to the question of whether appellant has demonstrated he was egregiously harmed.

The court's charge began with the statement that appellant stood charged with "violation of a protective order by assault." The application paragraph did not define "assault" but it required the jury to find appellant guilty of "violation of a protective order by assault" if it found appellant violated the terms of the protective order by "intentionally or knowingly committing family violence against [Thornton] by striking [Thornton] in the face or head with [appellant's] hand." Appellant argues this "forces the assumption" that "either all instances of family violence constitute an assault or that all instances of striking an individual in the face or head constitute an assault." We are unable to envision a scenario in which a man, subject to a protective order, striking a woman in the face or head with his hand would not commit assault. Further, we note the jury was correctly charged on the lesser-included offense of assault as follows:

—7—

> If you find from the evidence beyond a reasonable doubt that on or about the 18th day of September, 2012, in Collin County, Texas, the defendant, ANDRE D. BERRY, did then and there intentionally or knowingly cause bodily injury to Camilla Thornton by striking Camilla Thornton in the face or head with defendant's hand, then you will find the defendant guilty of the lesser included offense of assault.

TEX. PEN. CODE ANN. § 22.01(a)(1) (person commits assault if person intentionally, knowingly, or recklessly causes bodily injury to another).

Appellant characterizes the evidence as "contested." The evidence showed, at the outset, that appellant knew about the protective order and appealed from it. Kralemann testified appellant slapped Thornton in the face and "slammed the door on her leg." The jury saw photographs of Thornton's injured face. The reports made at the time of the injury showed Thornton said appellant hit her. The record indicates Kralemann may have been taking some prescription drugs on the night of the incident and may have received testimonial immunity from the State. However, Kralemann's testimony was clear and direct concerning the elements of the offense.

In closing, the State argued Thornton got a protective order and told the police what happened, but "when push comes to shove and it's judgment day, she's going to come in here and tell all of you she doesn't really remember what happened." The State argued Kralemann told police on the night of the assault that appellant hit Thornton in the face. The State asked the jury, if they found that "there was a protective order in place and it was valid and that [appellant] committed family violence and family violence is defined it includes the assault then he's guilty." The State pointed to the constable's return showing that appellant was served with the protective order. As further evidence of notice of the protective order, the State cited State's Exhibit 10A, appellant's notice of appeal of the protective order. Appellant's notice of appeal states he was "in county jail" at the time of the hearing on the protective order. As to each of the lesser included offenses, including assault, the State described each one in detail.

–8–

Defense counsel first argued the evidence showed the protective order was not valid. Thus, she argued, if the jury found the protective order was not valid, the jury could find appellant innocent because the State would have failed to prove one element of its case. Even if the protective order was valid, counsel argued appellant did not intentionally and knowingly violate the order because he did not know Thornton would be at the house where appellant encountered her. Counsel argued Kralemann was lying and brought his attorney "hoping to cut a good deal with the [S]tate." Counsel argued Thornton was also lying and knew how to "use the system" to "keep control of" [appellant].

In a brief rebuttal, the State argued to the jury that "[i]f you find he committed assault and you believe the protective order to be valid, he's guilty of violating the protective order by committing family violence." Having thus reviewed the entire jury charge, the state of the evidence, and the final arguments of the parties, we conclude appellant was not egregiously harmed by the errors and omissions in the court's charge. *See Olivas v. State*, 202 S.W.3d at 144. In particular, the issue of whether appellant assaulted Thornton and thereby violated the protective order was clearly before the jury. We overrule appellant's first, second, third, and fourth issues.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47.2(b)

/David L. Bridges/

131186F.U05

DAVID L. BRIDGES
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ANDRE D. BERRY, Appellant

No. 05-13-01186-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-82821-2012.
Opinion delivered by Justice Bridges.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 10, 2015.

ANDRE BERRY #228875 11-1-4D
CALLIN COUNTY DETENTION FACILITY
4300 Community Avenue
McKINNY, TEXAS 75071

COLLIN COUNTY DETENTION FACILITY

COURT OF CRIMINAL APPEALS
P.O. Box 12308
CAPITAL STATION
AUSTIN, TEXAS 78711

PD-0808-15
SENT: 9/14/15   TIME: 2:50 PM   LEGAL MAIL